DICKERSON and others *vs.* WASON and others.

Where one banker receives from another a promissory note, made by third persons, for collection merely, with instructions to remit the proceeds, when paid, in a draft, which note is subsequently paid by the makers, the receiver giving credit therefor to the person from whom he receives it, without any knowledge or notice that any other person than the one transmitting it to him has any interest therein, he has a right to retain the proceeds as against the true owner, on account of a balance due to him from the transmitter.

ON the 21st July, 1863, the plaintiffs were the owners of a promissory note, made by R. P. Myers of Cleveland, for $316.45, payable to the order of L. A. Carmer, and by him indorsed in blank. This note matured August 27, 1863. On the 21st July the plaintiffs indorsed the note and deposited it with Van Saun & Son, in New York city, for collection. On the next day Van Saun & Son sent it in a letter to Wason, Everett & Co., the defendants, stating, "inclosed we hand you for collection, *. * * and when paid remit proceeds in draft on New York," &c. "Protest if not paid." "Please report collection by numbers." The note thus inclosed was indorsed by Van Saun & Son, as follows: "Pay Wason, Everett & Co., or order, for collection." It was received by the defendants about July 24, and collected at maturity, August 27, 1863. On this day the defendants heard that Van Saun & Son had stopped payment. They never remitted to them the proceeds of this note, nor any other money after the 27th August, the day it was paid. The defendants had, however, prior to this date, sent to Van Saun & Son, August 12th, $572.73; August 14th, $1049.60; and August 18th, $155.22. Between August 11th and 25th, inclusive, Van Saun & Son had sent the defendants paper for collection in various amounts. And when the former stopped payment the defendants were indebted to them in account current in the sum of $5.82, after charging themselves with the proceeds of the note in question. The defendants did not credit this note to Van Saun & Son until it was paid, August 27, at matu-

Dickerson *v.* Wason.

rity. Nor had they made any arrangement to take the note or to buy it at any price, before maturity. The remittances made to Van Saun & Son by the defendants were of paper received from their customers in the course of their business, and payable in New York. They were not made on account of the note in question, but " as a general remittance on account current." " We inclose for credit," &c. The defendants knew that Van Saun & Son's business included that of making collections, and theirs was the same. The business between Van Saun & Son and the defendants began in 1859. At first they " used to remit drafts on themselves at their request, but latterly by mutual agreement we [the defendants] advised them to their credit." The specific proceeds of collections had not been sent " since the new arrangement now spoken of, and which was made a year and a half prior to their (Van Saun & Son's, Aug. 27, 1863) failure." The exchange on the note appeared to have been received by the defendants as compensation for the collection, crediting Van Saun & Son simply with the face of the note. Van Saun & Son had advanced no money on the note in question. It belonged to the plaintiffs.

The defendants in their answer, among other things, alleged that they and Van Saun & Son had an agreement and understanding with each other that the defendants might, before the maturity of any paper in the defendants' hands received from said Van Saun & Son, advance to said Van Saun & Son money thereon, and pay for and purchase the same, and retain and keep said paper and the proceeds thereof, when collected, to reimburse the defendants for such advances to Van Saun & Son ; that pursuant to said habit, practice and agreement, said note set forth in the complaint was received by the defendants from said Van Saun & Son on or about the — day of July, 1863, under the supposition and belief of said defendants that Van Saun & Son owned the same, and without any knowledge or notice

that the plaintiffs, or any other persons than said Van Saun & Son, had any interest or property therein; that the defendants knew the maker of said note, and knew that he was good and responsible, and that the same would be paid at maturity; and that under said agreement and understanding between them as aforesaid, the defendants, after receipt of said note by them, and before the maturity thereof, and before the 21st day of August, 1863, advanced to Van Saun & Son thereon money equal to the full value and amount of said note, in good faith, without any knowledge or notice that the plaintiff, or any other person or persons than Van Saun & Son, had any interest or property in said note; whereby the defendants were, before said 27th day of August, 1863, entitled to said note and the proceeds thereof, and owned the same.

On the 6th day of October, 1863, the plaintiffs having traced the proceeds of their note into the hands of the defendants, (who upon demand refused to pay,) this action was brought to recover the amount. The case was tried before Justice Cardozo and a jury. The evidence having been closed, the plaintiffs asked the court to instruct the jury to find a verdict for the plaintiffs, but his honor instructed the jury that there was no question of fact for them to pass upon, and directed them to find a verdict for the defendants; to which ruling and instructions the plaintiffs' counsel excepted. The jury having rendered their verdict for the defendants under the direction of the court, the exceptions were thereupon ordered to be heard in the first instance at the general term, and the judgment in the meantime suspended.

*Abram Wakeman,* for the appellants. I. At the close of the case the court should have directed the jury to find a verdict for the plaintiffs, as requested by their counsel. Their title to the note was not questioned. Van Saun & Son received it simply as agents for collection, and the

Dickerson *v.* Wason.

defendants could make no valid claim to it, or to the proceeds of it, unless they showed that they parted with value for it in good faith and without notice. (*McBride* v. *The Farmers' Bank,* 25 *Barb.* 657 ; affirmed on appeal, 26 *N. Y. Rep.* 450. *Commercial Bank of Clyde* v. *Marine Bank, Transcript Appeals, vol.* 36, *p.* 302. *Hoffman* v. *Miller,* 9 *Bosw.* 334.) The defendants claim, however, that the case at bar is distinguishable from these authorities, upon the ground that they parted with value to Van Saun & Son on the faith of the note in question and of other paper received by them for collection.

II. But this ground is not available to the defendants; because the form of the indorsement and the instructions of Van Saun & Son, which accompanied the note, did not authorize them to take it to their account. (1.) The indorsement by Van Saun & Son was a restrictive one, to wit: "Pay Wason, Everetts & Co., or order, *for collection.*" With this indorsement, the defendants could not have negotiated it before maturity; in other words, could not have treated it as their own. All they had any right to do was to hold the note, and when due collect it. Had they attempted to sell it, the purchaser would have seen that they had no negotiable title to it, and only held it for collection. But a right to take the note to their own account involved the right to sell it. It is manifest, therefore, that as between Van Saun & Son they, the defendants, had no right to take the note to their own account. (*Sigourney* v. *Lloyd,* 8 *B. & C.* 622.) (2.) But it may be claimed that the custom and mode of business between the defendants and Van Saun & Son, established a year and a half before this note became due, expressly authorized the taking of the note to their account. To this we reply that Van Saun & Son having parted with no value for the note, and being mere agents of the plaintiffs for its collection, in this particular instance, expressly abrogated the usual mode of business between them and their correspondents,

and specially instructed the defendants that the note was handed them for collection, and when paid to remit the *proceeds* in draft on New York, and to protest if not paid. For a year and a half they had in no case remitted the specific proceeds. The instructions of the defendants were: " We inclose for credit," or "place to our account when paid," and " by mutual agreement." This was the mode of business between these parties. Now it is not easy to see how, in view of this single express revocation of this order of business, and in the face of these specific instructions from a principal, the agent can claim the right to deal with this note as he pleased, and in so doing, claim that he acted in good faith. (*Van Amee* v. *The President &c. of Bank of Troy,* 8 *Barb.* 312 ; *approved,* 26 *N. Y. Rep.* 450, 455. *Warner* v. *Lee,* 2 *Selden,* 144. *Sweeney* v. *Easton,* 1 *Wall. U. S. Rep.* 166.)

III. The defendants have not shown themselves holders for value on the faith of the note in question. The remittances they made to Van Saun & Son, after receiving the note from them, were not made on account of the note in question, and did not authorize Van Saun & Son to apply any portion of them to the note. " We sent them," (say the defendants,) "to be passed to our credit as a general remittance in account current." They were not a loan or advance to Van Saun & Son in any sense, but were sent for the defendants' convenience, as they received them from their customers. Of course, the defendants had a right to draw against or to assign them.

IV. Van Saun & Son were in good credit up to the 27th August, 1863, and were employed by the defendants to make collections for them as their agents. Van Saun & Son, in like manner, employed the defendants. Neither party made discounts for, or loans or advances to the other, but the balances of account from time to time, either way, were merely accidental. Each party knew the other was doing a business—partially, at least, fiduciary in its char-

Dickerson *v.* Wason.

acter—and neither party had the right, therefore, to make loans or advances on the faith that the securities received from the other were his own property; certainly not in the face of the specific instructions given in relation to the note in question.

V. Upon the whole case, we insist that the judge erred at the trial in directing a verdict for the defendants, and that this court should now order that judgment be rendered for the plaintiffs, with costs.

*A. R. Dyett*, for the respondents. The defendants contend that the case of *The Commercial Bank of Clyde* v. *The Marine Bank*, (1 *Trans. Ap. Cases, p.* 302,) reported since the decision of the general term, in this case, overrules it. Justice Cardozo did not think so; and by reading the facts of the case, and referring to the last clause in the opinion, on the last page, (306,) it will be seen that the second paragraph of the syllabus of the case correctly states the point decided, and that so far from overruling the decision of the general term in this case, it is in entire harmony with it and with the opinion of Mr. Justice Ingraham. The judgment should be affirmed, with costs.

GEO. G. BARNARD, J. This case was once before the general term of this district. At that time the judgment was set aside, and a new trial ordered. The opinion of the justice decided that the plaintiff could not recover. On the second trial a judgment was ordered for the defendant. I think it was right. (48 *Barb.* 412.)

The judgment should be affirmed, with costs.

CLERKE, P. J. I concur in the above conclusion. The case referred to by the plaintiffs' counsel (*McBride* v. *The Farmers' Bank of Salem*, 25 *Barb.* 657; 26 *N. Y. Rep.* 650) does not support his position. It was there held that, to justify the receiving bank in retaining the proceeds of

---

the notes, a credit must have been given on the strength of the particular notes or their proceeds. In the case before us this is precisely what was done by the defendants, in respect to the note in question. They gave credit for it to Van Saun & Son, from whom they received it.

CARDOZO, J.   I concur in the conclusion that this judgment, in reference to the previous action of the general term, when the case was first before it, should be affirmed. But I do not wish to be understood as assenting to the correctness of that decision.

Judgment affirmed.

