Dod *v.* Fourth National Bank of New York.

New trial granted.

[First Department, General Term, at New York, April 4, 1871. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]

---

## Dod *vs.* The Fourth National Bank of New York.

The plaintiff delivered to the First National Bank of New Orleans a draft on New York city, and the same was, in the ordinary course of business, sent by that bank to the defendant, its correspondent in New York, for acceptance and collection. The New Orleans bank failed, and its receiver gave the plaintiff an order for the draft, on the defendant, which it declined to accept, claiming to hold the draft under an agreement with said bank, by which the defendant was to hold all collection paper as collateral against overdrafts, and alleging that it had parted with money on the faith of such draft. *Held* that the evidence to show that any specific loan was made on the faith of the draft, being wholly unsatisfactory, the claim of the defendant could not be sustained, and the case fell within the authority of *Lindauer* v. *The Fourth National Bank*, (55 *Barb.* 75.)

The decision in *Dickerson* v. *Wason*, (54 *Barb.* 230,) should not be extended to any case not falling within the facts of that case.

THIS action was brought to recover the proceeds of a draft for $821.91, received by the defendant under the following circumstances: On April 15, 1867, the plaintiff was in New Orleans, Louisiana, and had then in his possession a draft for $821.91 on Spence, Montague & Co. of New York city, drawn by Francis P. Drain, at Havana, March 30, 1867, payable to the order of the plaintiff, sixty days after date, of which draft the plaintiff was the owner, and on that day he delivered said draft to the cashier of the First National Bank of New Orleans for acceptance and collection. Said draft was received by said First National Bank for acceptance and collection, and entered in its foreign collection book, and on the same day was sent in a letter to the defendant, at New York, for acceptance and collection; and on its transmission as aforesaid, it was indorsed by the plaintiff, and it was also indorsed by the cashier of said First National Bank to the defendant for collection on account of said First National Bank. And said draft was afterwards received by the defendant and presented to the drawees for acceptance, and accepted April 20, 1867, and on June 22, 1867, the defendant collected said draft and received from the drawees the proceeds thereof, $821.91. On June 1, 1867, the said First National Bank having failed and gone into liquidation, and a receiver having been appointed of all its assets, said receiver delivered to the plaintiff an order on the defendant to deliver said draft or its proceeds to the plaintiff. Before the draft became due, said order was presented to the defendant by Joseph W. Ryan, acting on behalf of the plaintiff, and said draft duly demanded. And, at the same time, Ryan presented to the cashier of the defendant a letter signed by the plaintiff, notifying such cashier to make no discount or other use of said draft.

Said Ryan saw both the president and cashier of the defendant, and the president said that the First National Bank was indebted to the Fourth National Bank about

$40,000, and he was not disposed to give up the draft, but he did not say anything about having made any advances upon it, or about the draft having been pledged by the First National Bank to them. After the defendant had collected the draft as aforesaid, and before the commencement of this action, the proceeds thereof were duly demanded of them by the plaintiff, but said proceeds have never been paid over to the plaintiff, and are still held by the defendant. The general course of business between the two banks was as follows: The First National Bank bought exchange in New Orleans, and sent it to the defendant and drew against it, but the business of the draft in question was separate from that business, as it was forwarded simply for collection. On its receipt by the defendant it was entered in its register for collection drafts, and was never credited to the First National Bank until after it was collected, June 19, 1867. On April 20, 1867, the day the defendant received said draft, the First National Bank had overdrawn its acccount on the defendant about $100,000. On May 22, 1867, it was overdrawn only from $50,000 to $60,000; and on May 11, 1867, it was about the same. It was claimed by the defendant that it made specific advances on the faith of this particular draft. Upon this question the evidence was not entirely clear. The bank never knew of its existence until it was received. And there is no evidence that the defendant ever, in any way, advanced any money to the First National Bank, after it received this draft. By the testimony of Billopp Seaman, cashier of the defendant, it appeared that the defendant had an understanding or agreement with one A. C. Graham, who assumed to act as the agent in the city of New York of the First National Bank, that the defendant should hold all collection paper in its hands, as collateral against overdrafts; but at what particular time this agreement was made did not appear, and the agency of Graham was not shown, and it appeared that the de-

fendant never advised or apprised the First National Bank of that understanding with Mr. Graham.

The cause was tried before Hon. John R. Brady and a jury, on May 9, 1870. When the plaintiff rested, the defendant moved to dismiss the complaint upon the following grounds: That there was no privity established between the plaintiff and the defendant; that the plaintiff was in no position to maintain this action as against the defendant; and that whatever claim the plaintiff had was against the First National Bank of New Orleans, and against it only. The court denied the motion, and the defendant excepted. The court directed the jury to find a verdict for the plaintiff for the amount claimed in the complaint, to which direction the defendant excepted, and the court directed the exceptions to be heard in the first instance at the general term, and the plaintiff now moved for judgment on said verdict.

*J. H. & B. F. Watson,* for the plaintiff.

I. An objection was taken by the defendant at the trial, that there was no privity between the plaintiff and the defendant; that the defendant was not the agent of the plaintiff, but of the First National Bank, which was the agent of the plaintiff; and the following cases were cited: *Costigan* v. *Newland,* (12 *Barb.* 456;) *Colvin* v. *Holbrook,* (2 *Comst.* 126;) *Montgomery Co. Bank* v. *Albany City Bank,* (3 *Selden,* 459 ;) *Denny* v. *Manhattan Co.,* (2 *Denio,* 115.) This objection is entirely untenable, and none of said decisions cover the case at bar. The last two of them merely decide, that for negligence or misconduct in the course of his agency, an agent is responsible to no one but his principal; and all that the first two decide is, that where an agent rightfully receives money for his principal which ought to be paid over to a third person, such third person cannot maintain an action against the agent for the recovery thereof; though the agent has never, in fact, paid it

over to his principal, and though the agent had notice of the claim made by such third person. These cases proceed on the ground that the agent owes a duty to his principal, and that he cannot be subjected to claims set up by third parties, conflicting with those of his principal; but the case at bar is very different. The First National Bank, by the action of its receiver, in giving the plaintiff the order on the defendant, of June 1, 1867, to deliver to him said draft or its proceeds, had parted with all its interest therein; and the defendant collected said proceeds, after the presentation to it of said order, and its refusal to comply therewith, and, consequently, may be said to have received in its own wrong the money of the plaintiff, and is legally bound to pay the same over to him, and to no one else. Again, the letter from Spencer, Montague & Co. to the president of the defendant, and which accompanied the check by which the draft in suit was paid, shows that the defendant did not receive the money as the agent of the First National Bank; but having received this letter with the check, and there being no evidence that it ever replied to this letter, it must be deemed to have acquiesced in its contents (as to which, see 1 *Greenl. Ev.* § 197,) and thus, in the language of the letter, to have agreed to hold the money, subject to the demand of the rightful owner.

Again, even had this money been rightfully received by the defendant as the agent of the First National Bank, yet the foregoing decisions do not apply to this case, and the defendant not having paid over the money to the First National Bank, the plaintiff, by the following decisions, is entitled to maintain this action against them. (*Arnold* v. *Clark*, 1 *Sandf.* 491. *Bank of Orleans* v. *Smith*, 3 *Hill*, 560.)

II. The evidence shows conclusively that this draft was the property of the plaintiff; that it was delivered by him to the First National Bank for collection, and by the First National Bank forwarded to the defendant for collection; and the only question in the case is, whether the defend-

ant, by making advances upon it to the First National Bank, has acquired any interest in, or lien upon it, so as to enable it to hold its proceeds as against the plaintiff.

That they have not acquired any such lien or interest is evident for the following reasons: 1. There is no evidence of any express agreement that the defendant should have a lien upon the paper sent to it for collection by the First National Bank. The evidence to that effect was disregarded by the jury, under the direction of the court, and even had there been sufficient evidence of an agreement such as that testified to by the defendant's cashier, yet it was clearly void; for, it was an agreement, "that they should hold all collection paper in their hands as collateral against over-drafts;" in other words, it was an agreement that they should hold the property of third persons as collateral against the over-drafts of the First National Bank; for, as was said in *Van Namee* v. *The Bank of Troy,* (5 *How. Pr.* 170,) a bank must know that a large part of the paper received from its correspondents is placed there for the sole purpose of collection, which is sufficient notice to put it upon inquiry, and to prevent it from relying upon such paper as security for advances or for a balance; but here would be an express agreement to hold securities as to which it had express notice that they were not the property of its correspondent. Its defense, then, must be sustained, if at all, on the ground of its general lien as a banker. 2. The defendant never knew of the existence of this draft until it received it, and there is no evidence that it advanced any money to the First National Bank after the receipt of said draft. The only evidence on the subject is that of the defendant's cashier, who says that on April 20, 1867, the day of such receipt, the account of the First National Bank on his bank was overdrawn about $100,000; and again, that on said 20th of April the defendant advanced to said First National Bank $2985, and that said advance was made through the clear-

ing house, at about half past ten o'clock in the morning; but he says that he does not remember at what time of day the draft in question was received by his bank. Might it not have been after said advance was made, and after said account was overdrawn as aforesaid, and how, then, can the defendant be said to have made any advance on this draft. Again, he says that he does not know at what time of day the draft was accepted, and that they made an advance upon it before they knew whether it was going to be accepted or not, which looks extremely improbable, and leads to the inference that this advance, if made at all, was made before they received the draft in question, and without any reference to it whatsoever; and, moreover, the inconsistency of the cashier's testimony is apparent, for he says that on April 20, 1867, the account of the First National Bank was overdrawn about $100,000; that on May 22d it was overdrawn between $50,000 and $60,000, and that on May 11, it was about the same, and yet that between April 20 and May 11 it increased. 3. But even conceding that said advance was made, and said account or some part thereof overdrawn after the receipt by the defendant of said draft, yet there is no evidence to show that any specific advance was made on the faith of this particular draft; for it certainly does not appear what part of said $100,000 was overdrawn on April 20, 1867, and by the evidence of said cashier it appears that in making said advance, they were advancing upon other drafts at the same time, and unless there was such a specific advance made, the defendant did not acquire any lien on, and is not entitled to hold this draft, or its proceeds, as against the plaintiff. (*Van Namee* v. *Bank of Troy*, 5 *How. Pr.* 161. *McBride* v. *Farmers' Bank*, 25 *Barb.* 657; *affirmed* 26 *N. Y.* 450. *West* v. *American Exchange Bank*, 44 *Barb.* 175. *Commercial Bank of Clyde* v. *Marine Bank*, 3 *Keyes* 337. *Lindauer* v. *Fourth National Bank, of N. Y.* 55 *Barb.* 75.) The case last cited is even stronger than the case at bar, for there

the agreement between the defendant and the New Orleans Bank, to allow the latter to overdraw its account, and the defendant to hold its remittances for collection as collateral, &c., was proved, and it was also proved that the defendant did make advances after the receipt of remittances in which the draft in question in that case was included. The case of *Dickerson* v. *Wason,* (48 *Barb.* 412; 54 *id.* 230,) cannot be regarded as an authority to the contrary, for by reference to that case it will be seen that it is very different from the present one; as in that case the only business that the defendants did for Van Saur & Son was to make collections for them. July 24, they received the note in controversy, and on August 27, 1863, they collected it, and on this day Van Saur & Son stopped payment. Wason had sent them money enough to cover the proceeds of all collections that they had made for them, including the note in controversy, and leaving them indebted to Wason in a balance of $5.82; and it was held that Wason was entitled to retain the proceeds of the note. It was not necessary that the specific proceeds of collections should be sent. 4. The draft in question was never in any way pledged or assigned to the defendant. It was simply indorsed to it for collection, and as it is well known among bankers that a large part of the paper received by them from their customers for collection is the property of third persons, there were facts sufficient to put it upon inquiry as to the ownership of the draft in question; and moreover, the facts in this case show positive notice to it that the draft was not the property of the First National Bank; and when it received it, it entered it in its register for collection drafts, and it was not entered in the account of the First National Bank, either as debit or credit, until after it was collected, and it had notice of the plaintiff's claim, which shows that the defendant did not regard it as the property of the First National Bank, and that it is not a *bona fide* holder for value. (*McBride* v. *Farmers'*

*Bank; Van Namee* v. *Bank of Troy, supra. Arnold* v. *Clark,* 1 *Sandf.* 491.)

*Livingston K. Miller,* for the defendant.

I. There was no privity between the plaintiff and defendant. The defendant was not the agent of the plaintiff, but of the New Orleans bank, which, in its turn, was the agent of the plaintiff. The defendant owed no duty to the plaintiff. This, under the decisions, is a fatal objection to the plaintiff's right to recover. (*Costigan* v. *Newland,* 12 *Barb.* 456. *Denny* v. *The Manhattan Co.,* 2 *Denio,* 115, affirmed in *Ct. of Errors,* 5 *id.* 639. *Colvin* v. *Holbrook,* 2 *Comst.* 126. *Montgomery Co. Bank* v. *Albany City Bank,* 3 *Seld.* 459.) In *West* v. *Am. Ex. Bank,* (44 *Barb.* 175,) it is conceded that it would have been a good point if it had not been waived by the answer.

II. The plaintiff might, perhaps, have brought replevin. If not, his only remedy was against the New Orleans bank, or its receiver. There is no contract, express or implied, upon which this form of action can be sustained in behalf of this plaintiff against this defendant. These points, if sustained, are decisive of the whole appeal.

III. The other question in this case is, had the defendant a right to retain the proceeds of the draft in question as against the debts of the New Orleans bank to it? Under the decisions of the U. S. courts this right could not be questioned. It could be held under the general bankers' lien for antecedent advances, even had there been no advances or no credit given on the faith of said remittances. (*Bank of the Metropolis* v. *New England Bank,* 1 *How. U. S.* 234. 6 *id.* 212. *Swift* v. *Tyson,* 16 *Peters,* 1.) This ruling has not been followed to its full extent in our State courts, and the rule, as established by the various decisions in this State, seems to be, that in order that the receiving bank may retain moneys so received, it must be made to appear either, 1. That the receiving bank has

given absolute credit to the remitting bank for the draft when received, without waiting for its collection; or, 2. Must have paid something, parted with some value, on the faith of it.

IV. We claim that the second requirement has been fully met. The facts in this case are not involved in any dispute. The defendant did make payments on the faith of it.

V. The following cases go to establish the right of the plaintiff to hold the draft in question: (*Stalker* v. *McDonald*, 6 *Hill*, 93. *Market Bank* v. *Hartshorne*, 3 *Keyes*, 137. *McBride* v. *Farmers' Bank*, 26 *N. Y.* 451,) where it was held that the defendants could not retain the money because they had given nothing, parted with no value, leaving it to be inferred that, had they given anything, parted with value, as in this case, they could have retained it. *Commercial Bank of Clyde* v. *Marine Bank*, (3 *Keyes*, 337,) is to the same effect; the defendants could not retain the draft because they had not parted with value. In the present case they had, and therefore the rule does not apply.

VI. *Dickerson* v. *Wason*, (54 *Barb.* 230,) is a case nearly identical in principle with the present, and it seems to us conclusive on the question.

VII. It may, perhaps, be claimed that the case of *West* v. *Am. Ex. Bank*, (44 *Barb.* 175,) is authority against the defendant. It is in some respects like the present; but it will be observed that the court expressly put the plaintiff's right to recover upon the ground that "it is not found that the defendant paid said drafts upon the credit or faith of the note in question, or of its proceeds;" and citing *McBride* v. *The Farmers' Bank*, (26 *N. Y.* 450,) they say: "without this, the subsequent advances are insufficient to sustain the defendants' claim." Now, in the present case, it is in evidence, uncontradicted, that the defendant did make advances upon the faith of this draft, and therefore the case does not apply.

Nicoll v. Fash.

*By the Court*, CARDOZO, J. I think the evidence given by the defendants would not have justified a verdict that they had parted with any money upon the faith of the draft which had been sent to them for collection, even if, which they did not, they had asked the circuit judge to submit that question to the jury. I know that the cashier swears generally to having advanced on this and other drafts; but I think when all his evidence is considered, it is wholly unsatisfactory to support such a theory as that any specific loan was made on the faith of this draft. That being so, the case falls within the authority of *Lindauer* v. *Fourth National Bank*, (55 *Barb.* 75,) and the ruling below should be sustained.

I am not in favor of extending *Dickerson* v. *Wason*, (54 *Barb.* 230,) to any case which does not fall precisely within the facts of that decision.

The exceptions should be overruled, and judgment ordered for the plaintiffs upon the verdict, with costs.

Judgment for the plaintiffs.

[FIRST DEPARTMENT, GENERAL TERM, at New York, April 4, 1871. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]