THE PRESIDENT AND DIRECTORS OF THE BANK OF THE METROPO- LIS, PLAINTIFFS IN ERROR, *v.* THE PRESIDENT, DIRECTORS, AND COMPANY OF THE NEW ENGLAND BANK, DEFENDANTS.

*When there have been, for several years, mutual and extensive dealings between two banks, and an account current kept between them, in which they mutually credited each other with the proceeds of all paper remitted for collection, when received, and charged all costs of protests, postage, &c.; accounts regularly transmitted from the one to the other and settled upon these principles; and upon the face of the paper transmitted, it always appeared to be the property of the respective banks, and to be remitted by each of them upon its own account; there is a lien for a general balance of account upon the paper thus transmitted, no matter who may be its real owner.*

THIS case was brought up by writ of error from the Circuit Court for the District of Columbia.

At the trial in the Circuit Court, it appeared upon the evidence that the Bank of the Metropolis, one of the banking institutions of the District of Columbia, had been for a long time in the habit of dealing and corresponding with the Commonwealth Bank of Massachusetts. They mutually remitted for collection such promissory notes or bills of exchange as either might have, which were payable in the vicinity of its correspondent, which, when paid, were credited to the party who sent them, in the account current kept by both banks, and regularly transmitted from the one to the other and settled upon these principles. The costs and expenses, such as protests and postage, were, of course, charged in such account.

The balance was sometimes in favour of one, and sometimes of the other. On the 24th of November, 1837, the Bank of the Metropolis was indebted to the Commonwealth Bank in the sum of $2200, and in the latter part of the year 1837, the Commonwealth Bank transmitted to the Bank of the Metropolis, for collection in the usual way, sundry drafts, notes, and other commercial paper which would fall due in the ensuing months of February, March, April, May, and June. They were endorsed by E. P. Clarke, cashier, and made payable to C. Hood, cashier, and again endorsed by C. Hood, cashier, to G. Thomas, cashier. Clarke was the cashier of the New England Bank; Hood, of the Commonwealth Bank, and Thomas of the Bank of the Metropolis.

On the 13th of January, 1838, the Commonwealth Bank failed, and on that day Charles Hood, the cashier, wrote a letter to the Bank of the Metropolis, directing them to hold the paper which had been forwarded, as above stated, "subject to the order of the cashier of the New England Bank, it being the property of that institution." When this letter was received, the account was examined, and it was discovered that on that day the Commonwealth Bank was indebted to the Bank of the Metropolis in the sum of $2900.

The deposition of Charles Hood, which appeared to have been taken under the act of Congress, was read in evidence by the defendant in error. It stated, among other things, that " the Commonwealth Bank never, at any time, owned any of said notes or obligations, or any part or either of them, and had never any

right, title, interest, claim, or lien thereon, but that the same were at the time of the receipt, and ever afterwards, the property of said New England Bank, and subject to its order and control."

The reading of this deposition was objected to in the court below, and included in the bill of exceptions; but as the objection was not argued in this court, it is presumed to have been abandoned.

The action was brought by the New England Bank against the Bank of the Metropolis, and the judgment in the Circuit Court was in favour of the plaintiff for the whole amount of the proceeds of the notes and bills in question.

At the trial, a bill of exceptions was taken by the defendant, (the present plaintiff in error,) which, after reciting the evidence, concludes as follows:

Whereupon, the counsel for defendants prayed the court to instruct the jury, that, if they shall believe from the said evidence that the Commonwealth Bank did for a series of years transact business with defendants, and did from time to time transmit notes and other commercial paper to defendants for collection, which were all treated by both parties as if the same were the property of the said Bank of the Commonwealth, who were credited in their account current with the proceeds, and charged with the costs and expenses which accounts were from time to time adjusted upon these principles; that the notes and paper mentioned in said letter of 13th January, 1838, were endorsed and transmitted in the ordinary course of business, without any notification that any other party or person had any interest in said paper, were thus received by defendants, and held by them; that while thus held by them, the said Commonwealth Bank became insolvent or embarrassed in its circumstances, and after such embarrassment the letters aforesaid of the 13th January, 1838, were written, and at the time of their receipt by defendants, said embarrassed state of said Commonwealth Bank was known to defendants, and there was at that period a large balance on general account due defendants from said Commonwealth Bank, and the said paper was all regularly endorsed by the cashier of said Commonwealth Bank to defendants; the said defendants had a right to receive said paper, and the proceeds when recovered, until such balance was paid; and plaintiffs are not entitled

to recover; which instruction, as prayed, the court refused to give.

*Coxe,* for the plaintiff in error.
*Bradley,* for the defendant.

*Coxe* argued, 1. As to the law, supposing the Commonwealth Bank and the Bank of the Metropolis to have been the only parties in the transaction; and, 2dly, How far that law was changed by the intervention of the New England Bank. On the first point, he cited 17 Wend. 100; 1 Ryan and Moodie, 271; 1 Rose's Cases, 280, 80: 5 T. R. 488, 491, 493; 1 Esp. Cases, 66; 2 Bla. Rep. 1154.

As to the second point, he argued that it must have been a secret trust between the two eastern banks, which did not follow the specific paper; and cited 1 Rose's Cases, 238, 242, 246, 248; 7 T. R. 355; 7 Mass. Rep. 319, 324; 2 Vesey, 585.

*Bradley,* contra. As to the question of lien, 3 Bos. and Pul. 494; 6 T. R. 14; 7 East, 224, that special liens must be sustained by proof; also Burrow, 2221; 6 East, 28; 1 Atk. 236. That the *onus* is on the person who claims a lien, 7 Barn. and Cres. 212, in 14 Com. Law. Rep. 30; 3 Bro. Chan. Cases, 21. No lien for general balance on bills casually left. 7 Taunt. 278; see also 3 Mason's Rep. 222; 1 Maule and Selw. 140; 2 Dall. 60; 1 East, 335; 8 Barn. and Cres. 622, or 15 Com. Law Rep. 319; 7 Bingh. 284; 20 Com. Law. Rep. 130; Doug. 303; 3 T. R. 321; 1 P. W. 318; 3 P. W. 185; 1 Salk. 160; 1 Atk. 234; 2 Barn. and Ald. 327; 3 Barn. and Cres. 376; 1 Peters, 28, 30, 35.

*Coxe,* in conclusion, examined cases cited on the other side to show that they did not apply, and argued that there was a special usage made out between these two banks. In 1 Livermore on Agency, 261, cases examined, and same distinction drawn as exists here.

Mr. Chief Justice TANEY delivered the opinion of the court.

If this were a question between the two Boston banks, and the case depended upon their respective rights, the plaintiff in the court below would, undoubtedly, have been entitled to

recover.; for it is admitted, that although the notes and bills were endorsed to the Commonwealth Bank by the cashier of the New England Bank. yet no consideration was given for them; nor. any advances of money made upon them; and they were placed in the hands of the first-mentioned bank as the agent of the other, merely for the purpose of collection. The question, however, is a different one between the parties to this suit, and its solution must depend, not upon the nature of the transactions between these two banks, but upon the dealings between the Commonwealth Bank and the Bank of the Metropolis.

It appears from the evidence offered by the plaintiff in error, that for several years prior to the insolvency of the Commonwealth Bank, (which happened in January, 1838,) there had been mutual and extensive dealings between the two last-mentioned banks, and an account-current between them, in which they mutually credited each other with the proceeds of all paper remitted for collection when received; and charged all costs of. protest, postage, &c. Accounts were regularly transmitted from the one to the other, and settled upon these principles; and, upon the face of the paper transmitted, it always appeared to be the property of the respective banks, and to be remitted by each of them on its own account.

The balances in the account current fluctuated according to the amount of paper they respectively transmitted, and these balances- it. would seem were generally suffered to remain until they were reduced by the proceeds of the notes and bills deposited with each other in the usual course of their business. Thus, in November, 1837, the Bank of the Metropolis was debtor upon the account in the sum of $2200; but in January, 1838, when notice of the failure of the Commonwealth Bank was received, that balance had been extinguished, and the last-mentioned bank was debtor in the. sum of $2900. It is not suggested that any information of the interest of the New England Bank, in the paper in question, was ever communicated to the Bank of the Metropolis until after the insolvency of the Commonwealth Bank. And the question is, whether the plaintiff in error has a right to retain. the proceeds of the notes then in its hands to cover the balance of account due upon these transactions.

If the notes remitted had been the property of the Common-

wealth Bank, there would be no doubt of the right to retain; because it has been long settled, that wherever a banker has advanced money to another, he has a lien on all the paper securities which are in his hands for the amount of·his general balance, unless such securities were delivered to him under a particular agreement.

The paper in question was, however, the property of the New England Bank, and was endorsed and delivered to the Commonwealth Bank for collection, without any consideration, and as its agent in the ordinary course of business; it being usual, and indeed necessary, so to endorse it, in order to enable the agent to receive the money. Yet the possession of the paper was *prima facie* evidence that it was the property of the last-mentioned bank; and without notice to the contrary, the plaintiff in error had a right so to treat it, and was under no obligation to inquire whether it was held as agent or as owner; and if an advance of money had been made upon this paper to the Commonwealth Bank, the right to retain for that amount would hardly be disputed.

We do not perceive any difference in principle between·an advance of money and a balance suffered to remain upon the faith of these·mutual dealings. In the one case as well as the other, credit is given upon the paper deposited or expected to be transmitted in the usual course of the transactions between the parties.

There does not, indeed, appear to have been any express agreement that those balances should not be immediately drawn for; but it may be implied from the·manner in which the·business was conducted; and if the accounts show that it was their practice and understanding to allow them to stand and await the collection of the paper remitted, the rights of the parties are the same as if there had been a positive and express agreement; and such mutual indulgence on these balances would be a valid consideration; and, like the actual advance of money, give the plaintiff in error a right to retain the amount due on closing the account.

It is evident that a loss must be sustained either by the plaintiff or·defendant in error by the failure of the Commonwealth Bank. We see no ground for maintaining that there is any superior equity on the side of the New England Bank. It contributed to give to the corporation which has proved ·insolvent

credit with the plaintiff in error, by the notes and bills which it placed in its hands to be sent to Washington for collection, endorsed in such a form as to make them *prima facie* the property of the Commonwealth Bank, and enabled it to deal with them as if it were the real owner. The Bank of the Metropolis, on the contrary, is in no degree responsible for the confidence which the defendant in error reposed in its agent. And when this misplaced confidence has occasioned the loss in question, it would be unjust to throw it upon the bank which has been guilty of no fault or want of caution, and which was induced to give the credit by the manner in which the defendant in error placed its property in the hands of an agent unworthy of the trust.

If, therefore, the jury find that the course of dealing between the Commonwealth Bank and the Bank of the Metropolis was such as is stated in the testimony; that they always appeared to be, and treated each other as the true owners of the paper mutually remitted, and had no notice to the contrary; and that balances were from time to time suffered to remain in the hands of each other to be met by the proceeds of negotiable paper deposited or expected to be transmitted in the usual course of the dealing between them, then the plaintiff in error is entitled to retain for the amount due on the settlement of the account.

The question, whether the balances were usually suffered to lie for a time on account of negotiable paper actually deposited or expected to be received, and which formed the consideration on which the defence rested, is not perhaps as distinctly stated as it might have been in the hypothetical instruction requested by the plaintiff in error. But we think it is fairly to be inferred from the language used in the prayer, by which the defence is put upon the ground that the paper transmitted was treated by the parties as the property of each other; and as the prayer was rejected without any explanation or qualification, we have no reason for supposing that a different construction was put upon it in the Circuit Court.

The judgment must therefore be reversed.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Co-

lumbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, with costs; and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to award a *venire facias de novo.*