(Decided June 6th, 1862.)

---

# Baltimore & Ohio Rail Road Company, Garnishee of Central & Ohio Rail Road Company, *vs.* George M. Wheeler and others.

A garnishee's liability for a defendant's property in his hands, is determined ordinarily by his *accountability* to the defendant for the property, and if by any pre-existing *bona fide* contract that accountability has been removed, or modified, the garnishee's liability is correspondingly affected.

Garnishment cannot have the effect of changing the nature of a contract between the garnishee and the defendant, or of preventing the garnishee from performing a contract with a third person; any other doctrine would lead to mischievous results.

Where the rights and credits attached depend upon mutual accounts between the garnishee and the defendant, the relation of debtor and creditor turns upon the terms and conditions on which their transactions were conducted.

A contract anterior to an attachment, *bona fide,* and for good consideration, between two railroad companies, whose roads connected and a system of through fare and freight established, that each should receive and advance

Balt. & Ohio R. R. Co., garn. of Central Ohio R. R. Co., *vs.* Wheeler.

for the other, the balances between them to be settled monthly, controls the attachment, and such contract may be *implied* or *inferred*, by, or from, a course of *mutual dealing*.

APPEAL from the Superior Court of Baltimore City.

*Attachment on warrant*, issued July 23rd, 1856, by the appellees, to affect the credits, &c., of the Central Ohio Railroad Company, and laid the next day in the hands of the Baltimore & Ohio Railroad Company, which appeared and pleaded *nulla bona*, and the case was tried October 6th, 1858.

*Exception:* The claim of the plaintiffs, (citizens of Massachusetts,) on three acceptances, amounting to $3,502.61, was admitted. It was also admitted, that the defendant, the Central Ohio Railroad Company, is a non-resident incorporation, incorporated by the laws of Ohio, and that paper O, furnished by the garnishee in response to the plaintiffs' interrogatories, truly represents the entire account between the garnishee and the defendant, between the periods embraced in the accounts therein stated. These accounts commence July 1st, 1856, and end September 8th, 1858, and appear to be settled monthly, the balances *being always in favor of the garnishee*, made up in part of cash advanced from time to time by the garnishee to the defendant. They further show, that when the attachment was laid, $49,411.87 were due the garnishee, and the latter received on account of the defendant, during that month, (July 1856,) $34,118.11, carried to the credit of the defendant on the last day of that month, and on the 31st of August there is carried to the credit of the defendant $38,760.53, making for the two months a credit of $72,878.64, and that the total of such credits, from the date of the attachment to the day of trial, amounted to over $800,000, but the balances as before stated, were always against the defendant, and the final balance against it is $82,095.93. The garnishee offered the evidence, stated in the opinion of this court. The plaintiffs offered three prayers:

1st. If the jury find that the garnishee received on account of the defendant, the sum shown by the account produced,

more than enough to pay the debt owing by the defendant to the garnishee *at the date of the attachment laid,* as shown by said account, and more than sufficient to pay the plaintiffs' claim, then it is the garnishee's right to apply the sums so received, to the payment in the first place of its own debt, due when the attachment was laid, and the balance is in the next place applicable to the plaintiffs' claim, and they are entitled to a verdict against the garnishee for the amount thereof.

2nd. If the jury find the facts stated in the preceding prayer, and further, that the garnishee after the attachment was laid in its hands, paid over to the defendant large sums received by it, for the defendant, more than sufficient to pay the debt due by the defendant to the garnishee, at the time the attachment was laid, as shown by said account, and more than sufficient to pay the plaintiffs' claim, then the plaintiffs are entitled to a verdict for the amount thereof.

3rd. That the account between the garnishee and the defendant, given in evidence, shows that the garnishee has money or credits of the defendant more than sufficient to pay the plaintiffs' claim, and the plaintiffs are entitled to a verdict for the amount thereof.

These prayers, the court (LEE, J.) refused. The garnishee then offered the prayer stated in the opinion of this court, which the court refused, and gave the instruction also set forth in the opinion of this court. The garnishee excepted to the refusal to grant its prayer, and to the instruction granted by the court. The verdict was in favor of the plaintiffs for the amount of their claim, and from the judgment of condemnation thereon, the garnishee appealed.

The cause was argued before BOWIE, C. J., BARTOL, GOLDS-BOROUGH and COCHRAN, J.

*J. M. Campbell,* for the appellant.

1st. To show that there was a particular and uniform course of dealing between the two companies, for the whole period

covered by the attachment, the monthly accounts between them were offered in evidence. From a glance at these accounts, it appears there is a continually recurring entry on both sides, of "freight and charges," and to explain this, which forms the great bulk of the account on either side, the garnishee offered in evidence, that the two roads meeting at the Ohio river, were used for through trade and travel, and that each receiving freight due the other, as well as itself, there were mutual accounts to be settled between them, for the receipts of each on the others behalf. With this explanation of a single, but constantly repeated item, the accounts show, that at the time the attachment was laid, the garnishee was in advance to and a creditor of defendant, for $49,411,87, and that every monthly settlement thereafter, down to the end of the account, the balance of the account was in favor of the garnishee. There never, consequently, was any thing in the garnishee's hands to sustain the verdict, if the course of dealing between it and the defendant is correctly set out in the accounts. But the express admission is, that the account truly represents the transactions between the parties. Now what does the account show? That the accounts were settled, and the balance ascertained, monthly. What further? That during each month, notwithstanding the balance was constantly against the defendant, it had the right to advances from the garnishee, on account of the latter's receipts of freight and charges for the defendant. *Modus et conventio vincunt legem.* The parties made a law for themselves by their mutual course of dealing, and the plaintiffs coming in under one of them, are bound by the acts of that one, and must submit to the terms established by both. 1 *How.*, 239, *Bank of Metropolis, vs. New England Bank.* The court below were therefore in error, in refusing the garnishee's prayer, which made the course of dealing between the parties, if found by the jury, the test of their rights and obligations *inter se*, and by consequence of the plaintiffs' claim which could only be founded thereon.

2nd. But the court's instruction was also erroneous. Coup-

ling this instruction with the refusal of the garnishee's prayer, how could the jury do other than assume, that the course of dealing between the parties was no evidence of such a contract, or agreement, as the instruction contemplated? But even if they were not so misled, the instruction was radically vicious. They were not told that such an agreement might be implied, and were necessarily shut up, therefore, to find an express agreement. It is not easy to say, to what period the word, "former," refers, and what is the meaning of the words, "appropriate the same." The burthen of proof, moreover, was not on the garnishee: the affirmative of the issue was on the plaintiffs, and as the evidence of receipts was not of receipts by themselves, but of receipts in an account which embraced charges on both sides, it was incumbent on the plaintiffs to show, that the counter charges did not affect their claim on the receipts.

*F. W. Brune,* for the appellees.

1st. The prayers presented by the appellees should have been granted. The account is admitted to be correct, and after payment of the garnishee, shows credits much more than sufficient to pay the plaintiffs' claim, for which the garnishee was, therefore, clearly liable; according to the principles of our attachment laws.

2nd. The appellant's prayer was properly rejected. No course of dealing between garnishee and defendant can prevent the operation of an attachment on credits which come into the hands of a garnishee, because all credits in the hands of a garnishee up to the date of the verdict, are liable to attachment, and not merely a balance of account, and because such a construction would entirely defeat the operation of the attachment laws, and lead to fraudulent arrangements between garnishees and defendants.

3rd. The instruction of the court, although erroneous, could inflict no injury on the appellant, but was more favorable to it, then it was entitled to, and the error is therefore no ground for

Balt. & Ohio R. R. Co., garn. of Central Ohio R. R. Co., *vs.* Wheeler.

reversal. There is no evidence of such a pre-existing contract or equitable agreement as the court refers to, and if there were it could not defeat the operation of the attachment.

In support of these positions see *Act of* 1795, *ch.* 56, *secs.* 1, 5, 6. *Hinkley's Attach.*, 110. 4 *H. & J.*, 355, *Allstan vs. Contee.* 3 *G. & J.*, 472, *Bosley vs. Ches. Ins. Co.* 4 *Gill*, 499, *Poe vs. St. Mary's College.* 5 *Gill*, 420, *Somerville vs. Brown.* 2 *Md. Rep.*, 74, *Keener vs. Harrod, et al.* 7 *Md. Rep.*, 287, *Kerr vs. Boston & Sandwich Glass Co. Drake on Attach.*, 517, and cases there cited. 1 *Amer. Lead. Cases*, 155, 290, 291. 1 *Merivale*, 608, *Clayton vs. Case.* 2 *Barn. & Ald.*, 39, *Bodenham vs. Purchas.*

BOWIE, C. J., delivered the opinion of this court.

The garnishees, to support the issue on their part, offered in evidence that the Baltimore and Ohio Rail Road and the Central Ohio Rail Road approach each other on opposite banks of the Ohio river, at Benwood and Bel Air, a few miles below the city of Wheeling, and that goods and passengers, intended for transportation on both roads or parts of both of them, are transferred in either direction from one road to the other, by being carried across the Ohio by suitable ferry boats at Benwood and Bel Air aforesaid. That when the Central Ohio Rail Road was opened for trade and travel, it began to be used for through travel and trade; the Baltimore and Ohio Rail Road Company receiving from passengers and for goods to be transported from points on the Baltimore and Ohio Rail Road, to points on the Central Ohio Rail Road, or beyond, the fare or toll due to the Central Ohio Rail Road Company, and the latter company receiving in like manner, the fare and toll due the Baltimore and Ohio Rail Road Company, when the passengers or goods were forwarded eastward from points on the Central Ohio Rail Road. In this way, there were mutual accounts to be settled between the said companies, for the receipts of each on the other's behalf, and these accounts, as they stood from the month in which the attachment was laid, (24th of July

1856,) were exhibited in response to the plaintiffs' interrogatories in the paper marked O, which, it was agreed, truly represented the entire account between the periods embraced in the said account, and, by agreement of counsel, was accepted as an answer to the interrogatories.

The appellees, (the plaintiffs below,) offered three prayers, which were refused, whereupon the appellants submitted the following instruction: "If the jury shall find from the evidence that before and at the time, and since the issual of the attachment in this case, there was a particular course of dealing between the Baltimore and Ohio Rail Road Company, garnishee, and the Central Ohio Rail Road Company, defendant, and that according to the course of dealing between them, there was not, at the time the attachment was issued or laid, and has not been since, any balance of account, owing by the Baltimore and Ohio Rail Road Company to the Central Ohio Rail Road Company, then, that the plaintiffs are not entitled to recover." Which instruction the court refused to give, but gave the following instruction: "If the jury find credits to the amount of the plaintiffs' debt, in the hands of the garnishees, they are entitled to recover, unless the jury also find the payments made by the garnishees were in virtue of some former pre-existing contract, or equitable agreement made by the gaarnishees, to appropriate the same, and it is incumbent on the garnishees to show, the existence of such pre-existing contract or equitable agreement." From which refusal to grant the instruction prayed for by the garnishees, as well as from the granting of that framed by the court, this appeal is taken.

Attachments upon warrant, under the Act of 1795, ch. 56, have been allowed great latitude, in their operation upon the rights and credits of defendants, so much so, as in the opinion of very distinguished and experienced jurists, to impede the negotiation of commercial paper:—*Vide Dorsey's opinion in Somerville vs. Brown,* 5 *Gill,* 402, 403.

The liability of a garnishee in respect of property of a de-

fendant in his hands, is to be determined, ordinarily, by his accountability to the defendant on account of the property. If by any pre-existing *bona fide* contract, that accountability has been removed or modified, it follows that the garnishee's liability is correspondingly affected, for it is well settled, that garnishment cannot have the effect of changing the nature of a contract between the garnishee and the defendant, or of preventing the garnishee from performing a contract with a third person: any other doctrine would lead to mischievous results. *Drake on Attach.*, sec. 517.

This principle is recognized by the decision in the case of *Poe vs. St. Mary's College*, where it was held, that the funds attached being deposited in the hands of the garnishee for a specific purpose, in advance, whether they belonged to the defendant or not, were not subject to the attachment. "Money deposited under such an agreement and for such purposes, cannot be attached as goods, even of the person depositing them, and the garnishees would have been guilty of a breach of trust if they had appropriated such funds to the payment of debts due from the father in this case, and then have deprived the scholars of the education which they undertook to give them, in consideration of the payments in advance to them." 4 *Gill*, 503. Where the rights and credits attached depend upon mutual accounts between the garnishee and the defendant, the relation of debtor or creditor turns upon the terms and conditions on which their transactions were conducted.

If, upon the adjustment of their accounts, in their usual course of business, a balance appears in favor of either, that balance is a credit subject to attachment. Had a special written contract existed between the garnishees and the defendants, that they should reciprocally receive and advance for each other, in consideration of the relative position of their roads, to increase the public accommodation and enlarge their profits, the balances between them to be setttled monthly or annually, no doubt could be entertained that the attachment would be

controlled by the contract.   An implied agreement established by a course of mutual dealing, it is apprehended would have the same effect.   It is immaterial how the contract was made, if it was anterior to the attachment, *bona fide* and for good consideration.

As between a factor and his principal, the former has a lien for the amount advanced either on the particular consignment or the balance of his general account.   *Livermore on Agency,* 261.   Should an attachment be laid in such case, on the rights and credits of the principal, the lien would depend upon the balance, on the settlement between them, not on the fact, that at any given time subsequent to the laying of the attachment, or before, the garnishee had received funds of the defendant. This is illustrated by the case of the *Bank of the Metropolis vs. New England Bank,* 1 *How.,* 234.   The Bank of the Metropolis, had been for a long time dealing and corresponding with the Commonwealth Bank of Massachusetts.   An account current existed between them, in which they mutually credited each other with the proceeds of all paper remitted for collection, when received, and charged all costs of protest, postage, &c.   The balance was sometimes in favor of one, and sometimes of the other.   On the 24th November 1837, the Bank of the Metropolis was debtor to the Commonwealth Bank $2200, and in the latter part of the year 1837, or January 1838, when notice of the failure of the latter was received, the Commonwealth Bank was indebted to the former $2900.   The Commonwealth Bank transmitted to the Bank of the Metropolis for collection, sundry drafts and notes, which would fall due·in February, March, April, May and June, endorsed in the usual way.   On the 13th of January 1838, the Commonwealth Bank failed, and its cashier wrote to the Bank of the Metropolis, to hold the paper forwarded as above, subject to the order of the cashier of the New England Bank, it being the property of that institution.   The action was brought by the New England Bank for the whole amount of the notes.   It was in proof that the Commonwealth Bank never at any time owned the notes, &c.

Balt. & Ohio R. R. Co., garn. of Central Ohio R. R. Co., *vs.* Wheeler.

Mr. Chief Justice Taney, in delivering the opinion, said: "If the notes remitted had been the property of the Commonwealth Bank, there would be no doubt of the right to retain; because it has been long settled, that wherever a banker has advanced money to another, he has a lien on all the paper securities which are in his hands for the amount of his general balance, unless such securities were delivered to him under a particular agreement. The paper in question was, however, the property of the New England Bank, and endorsed to the Commonwealth Bank for collection, without any consideration, and as its agent in the ordinary course of business, it being usual and necessary, so to endorse it, in order to enable the agent to receive the money. ＊ ＊ ＊ If an advance of money had been made upon this paper to the Commonwealth Bank, the right to retain, for that amount, would hardly be disputed. We do not perceive any difference, in principle, between an advance of money and *a balance suffered to remain upon the faith* of these mutual dealings. In the one case as well as the other, credit is given upon the paper deposited, or expected to be transmitted in the usual course of the transactions between the parties. There does not, indeed, appear to have been any express agreement that those balances should not be immediately drawn for, but it may be implied from the manner in which the business was conducted; and if the accounts show that it was their practice and understanding, to allow them to stand and await the collection of the paper remitted, *the rights of the parties are the same* as if there had been a positive and express agreement; and *such mutual indulgence on these balances would be a valid consideration;* and like the actual advance of money, give the plaintiff in error, (the Bank of the Metropolis,) *a right to retain the amount due on closing the account.* ＊ ＊ ＊ If, therefore, the jury find that the course of dealing between the Commonwealth Bank and the bank of the Metropolis, was such as stated in the bill of exceptions, then the plaintiff in error, (the Bank of Metropolis,) is entitled to retain for the amount due on the settlement of the account." 1 *How.*, 238 to 240.

Balt. & Ohio R. R. Co., garn of Central Ohio R. R. Co., vs. Wheeler.

So where railroads or canals, or other companies for the transportation of freight or passengers, have a connection and mutual dealings between them, for the promotion of their business, or public convenience, the relation of debtor or creditor must depend upon the course of that dealing.

The connection between coterminous lines of travel and transportation, cannot be maintained, unless agreements of this kind are recognized and sustained. The public convenience is greatly promoted by them, commercial relations, and social intercourse, are intimately interwoven with them. The net work of railroads, which checquers the country, is linked by such arrangements, and their usage, and course of dealing, must modify and control their liability to each other, as much as the usage and course of dealing of any other portion of the commercial world.

The law of the case was, in our opinion, correctly expressed in the prayer of the garnishees, and there was error in rejecting it. Although the instruction afterwards given to the jury, by the court, embraced, to some extent, the same proposition, yet it is susceptible of being so construed, as to place upon the garnishees the *onus* of proving an *express* pre-existing contract, or agreement, with the defendant: whereas, the rights of the parties depended upon the mutual relations existing between them, and may be determined or inferred from the course of dealing between them, as shown by the account and other evidence in the cause.

Considering there was error in refusing the prayer of the garnishees, the judgment of the Circuit court will be reversed.

*Judgment reversed and procedendo awarded.*

(Decided June 6th, 1862.)