# CHARLESTON.

## CARROLL v. BANK.

Submitted June 2, 1887,—Decided November 26, 1887.

1. BANKS—ACCOUNTS BETWEEN—LIEN FOR BALANCE.

Where there have been, for several years, mutual and extensive dealings between two banks, and an account current kept between them, in which they mutually credited each other with the proceeds of all negotiable paper transmitted for collection when received, and accounts were regularly transmitted from the one to the other, and settled upon these principles, and balances remitted when called for, and upon the face of the paper transmitted it always appeared to be the property of the respective banks, and the collecting bank had no notice that the transmitting bank did not own the paper, and such paper was transmitted by each of the two banks on its own account, there is a lien upon the paper thus transmitted for a general balance of account, no matter who may be the real owner of the paper. (p. 522.)

2. BANKS—ACCOUNTS BETWEEN—COLLECTIONS—NOTICE OF OWNERSHIP.

If the receiving and collecting bank, at the time of the mutual

dealings with the bank sending paper, had notice that such bank had no interest in the bills or notes transmitted, and that it transmitted them for collection merely, as agent, then the collecting bank would not be entitled to retain, against the owner of such paper, for the general balance of the account with such bank. (p. 530.)

**3. BANKS.**

If the collecting bank had no notice that the bank sending the remittance was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the collecting bank is not entitled, against the real owner, unless credit was given to the bank sending the paper, or balances suffered to remain in its hands, to be met by the negotiable paper transmitted, or expected to be transmitted in the usual courses of dealing between the two banks. (p. 530.)

**4. BANKS.**

But if, in the mutual dealings between the two banks, the collecting bank regarded and treated the bank transmitting negotiable paper as the owner of such paper, which it transmitted for collection, and had no notice to the contrary, and on the credit of such remittances, made or anticipated in the usual course of dealings between them, balances were from time to time suffered to remain in the hands of the bank sending the remittances, to be met by the proceeds of such negotiable paper, then the collecting bank is entitled to retain against the real owner of the paper, for the balance of account due from the bank transmitting such paper. (p. 530.)

**5. BANKS.**

The Penn Bank and Exchange Bank had mutual and extensive dealings for years; each transmitting paper to the other for collection, collecting, and crediting the sending bank with proceeds, and from time to time settlements were made between them. On the twenty fourth day of May, 1884, the Penn Bank inclosed in a letter to the Exchange Bank, "For collection," marked "No prin.," the following draft: "At sight, pay to the order of Penn Bank fifteen hundred dollars, value received, and charge to account of D. W. C. Carroll. *To Riverside Iron-Works, Wheeling, W. Va.*" The draft was indorsed: "Pay Exchange Bank or order, for account of Penn Bank, Pittsburgh, Pa. G. L. Reiber, Cashier." This draft was received by the Exchange Bank on Monday morning, May 26th, at once placed to the credit of the Penn Bank, sent out by messenger for collection, and paid by the drawee at 9:30 A. M. At that time, after giving the Penn Bank credit for the $1,500 draft, it still owed the Exchange Bank $205.43. At 12:05

P. M. on that day the Penn Bank failed. The Exchange Bank had no other notice than as above set forth that the Penn Bank did not own the paper. D. W. C. Carroll, the real owner of the paper, brought an action of *assumpsit* against the Exchange Bank for amount of draft and interest, and recovered in the court below. *Held*, the judgment must be reversed, and judgment entered for defendant.

*A. J. Clarke* for plaintiff in error.

*H. M. Russell* for defendant in error.

JOHNSON, PRESIDENT:

On the twenty sixth day of May, 1884, the Penn Bank of Pittsburg, Pennsylvania, failed and closed its doors at 12 o'clock and 5 minutes P. M. There had been between it and the defendant, the Exchange Bank, mutual dealings and accounts. These dealings had been mutual and reciprocal, large amounts being sent for collection from one to the other. The balance was generally in favor of the Penn Bank. Remittance had been asked from time to time, and were generally in even thousands. The balances were usually allowed to accumulate until they reached a certain figure,—no fixed figure, but it would run up to a few thousands,—when one or the other would call for a remittance.

There was a considerable balance due the Penn Bank on the twenty fourth of May, 1884. On that day the Penn Bank called by telephone to the Exchange Bank and asked for a remittance, and the latter bank responded by sending draft on New York for $2,500, and asked the National Exchange Bank of Steubenville, which owed the defendant several thousand dollars, to remit said sum to the Penn Bank for account of the defendant. On that day the Exchange Bank remitted to the Penn Bank about $500 more than it owed that bank, exclusive of collections due from it to the defendant. On the said twenty fourth day of May, 1884, in regular course of business, the following draft was sent from the Penn Bank to the defendant, the Exchange Bank:

"$1,500.                           PITTSBURGH, May 24, 1884.

"At sight, pay to the order of Penn Bank fifteen hundred dollars, value received, and charge to account of—

D. W. C. CARROLL.

"*To Riverside Iron Works, Wheeling, W. Va.*"

The draft was indorsed:

"Pay Exchange Bank or order, for account Penn Bank, Pittsburgh, Pa.

"G. L. REIBER, Cashier."

The draft was inclosed in a letter, bearing the names of the officers of the Penn Bank, etc., which is as follows:

"PITTSBURGH, May 24, 1884.

"*Exchange Bank, Wheeling, W. Va.*

DEAR SIR:—We inclose for collection 9,560, Wheeling Pottery Co., no prin., 23.07; 9,561, Riverside Iron-Works, no prin., 1,500.

"Yours, respectfully,

G. L. REIBER, Cashier."

The cashier of the Exchange Bank in his evidence, says that the draft was received on the morning of the 26th, (which was Monday,) and entered at once to the credit of the Penn Bank, and sent by messenger to present it to the drawee, who paid it about half past 9 o'clock that morning. In the afternoon, the Exchange Bank was informed of the failure of the Penn Bank. Some time after, a statement was sent from the officers of the Penn Bank which showed that when the failure occurred, after giving the Exchange Bank credit for the $1,500 sight draft, the balance due the said Exchange Bank was $205.43. The first notice the Exchange Bank received other than what appears upon the face of the draft and letter, if any there appears, that Carroll had any interest in the draft, was by the following telegram, received by the defendant the next day, May 27th. It was dated on the same day.

"Mail D. W. C. Carroll, Pittsburgh, proceeds of draft on Riverside Iron-Works to-day.

ISAAC W. VAN VOORHES,

Solicitor Penn Bank."

This the Exchange Bank refused to do. It appears that these mutual dealings between the two banks continued for about four years. It is shown, in the bill of exceptions, that D. W. C. Carroll was in fact the owner of the draft, and that he had sent it through the Penn Bank for collection; although of this fact the officers of the Exchange Bank were ignorant, unless they were notified of the fact by the draft,

66

indorsement, and letter transmitting it. On the twenty fifth day of June, 1886, in the Circuit Court of Ohio county, the said D. W. C. Carroll brought an action of *assumpsit* to recover of the Exchange Bank the amount of said draft and interest, and in the record the above-stated facts appear. On the eleventh day of January, 1887, the case having been submitted to the court in lieu of a jury, the court rendered judgment in favor of the plaintiff, against the defendant, for $1,735.25, with interest from that date, and costs. To this judgment the defendant obtained a writ of error.

On the facts, did the court err in rendering judgment for the plaintiff?

In *Bank* v. *Bank*, 1 How. 234, the Supreme Court of the United States held that, when there have been for several years mutual and extensive dealings between two banks, and an account current kept between them, in which they mutually credited each other with the proceeds of all paper remitted for collection, when received, and charged all costs of protest, postage, etc.; accounts regularly transmitted from the one to the other, and settled upon these principles; and upon the face of the' paper transmitted it always appeared to be the property of the respective banks, and to be remitted by each of them upon its own account,—there is a lien for a general balance of account upon the paper thus transmitted, no matter who may be its real owner. Taney, C. J., in delivering the opinion of the court in this case, said: "If the notes remitted had been the property of the Commonwealth Bank, (that is, the transmitting bank,) there would be no doubt of the right to retain; because it has long been settled that, whenever a banker has advanced money to another, he has a lien on all the paper securities which are in his hands for the amount of his general balances, unless such securities were delivered to him under a particular agreement. The paper in question was, however, the property of the New England Bank, and was indorsed and delivered to the Commonwealth Bank for collection, without any consideration, and as its agent in the ordinary course of business; it being usual, and indeed necessary, so to endorse it, in order to enable the agent to receive the money. Yet the possession of the paper was

*prima facie* evidence that it was the property of the last mentioned bank; and, without notice to the contrary, the plaintiff in error had a right so to treat it, and was under no obligation to inquire whether it was held as agent or as owner; and, if an advance of money had been made on this paper to the Commonwealth Bank, the right to retain for that amount would hardly be disputed. We do not perceive any difference in principle between an advance of money and a balance suffered to remain upon the faith of these mutual dealings. In the one case, as well as the other, credit is given upon the paper deposited, or expected to be transmitted, in the usual course of the transactions between the parties. There does not, indeed, appear to have been any express agreement that these balances should not be immediately drawn for, but it may be implied from the manner in which the business was conducted; and, if the accounts show that it was their practice and understanding to allow them to stand, and await the collection of the paper remitted, the rights of the parties are the same as if there had been a positive and express agreement; and such mutual indulgence on these balances would be a valid consideration, and, like the actual advance of money, give the plaintiff in error a right to retain the amount due on closing the account. It is evident a loss must be sustained, either by the plaintiff or defendant in error, by the failure of the Commonwealth Bank. We see no ground for maintaining that there is any superior equity on the side of the New England Bank. It contributed to give to the corporation which has proved insolvent credit with the plaintiff in error by the notes and bills which it placed in its hands to be sent to Washington for collection, indorsed in such a form as to make them *prima facie* the property of the Commonwealth Bank, and enabled it to deal with them as if it were the real owner. The Bank of the Metropolis, on the contrary, is in no degree responsible for the confidence which the defendant in error reposed in its agent; and, when this misplaced confidence has occasioned the loss in question, it would be unjust to throw it upon the bank, which has been guilty of no fault or want of caution, and which was induced to give the credit by the manner in which the defendant in

error placed its property in the hands of an agent unworthy of the trust." The judgment of the court below was reversed, and the case remanded for a new trial. Judgment was again had in favor of the New England Bank, and the case was again brought up on writ of error, (6 How. 212;) and the court held that the following instructions to the jury would have carried out the opinion of the Supreme Court: "If, upon the whole evidence before them, the jury should find that the Bank of the Metropolis, at the time of the mutual dealings between them, had notice that the Commonwealth Bank had no interest in the bills or notes in question, and that it transmitted them for collection merely as agent, then the Bank of the Metropolis was not entitled to retain, against the New England Bank, for the general balance of the account with the Commonwealth Bank." *Second.* "And if the Bank of the Metropolis had not notice that the Commonwealth Bank was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the Bank of the Metropolis is not entitled, against the real owner, unless credit was given to the Commonwealth Bank, or balances suffered to remain in its hands, to be met by the negotiable paper transmitted, or expected to be transmitted, in the usual course of the dealings between the two banks." *Third.* "But, if the jury find that, in the dealings mentioned in the testimony, the Bank of the Metropolis regarded and treated the Commonwealth Bank as the owner of the negotiable note which it transmitted for collection, and had no notice to the contrary, and, upon the credit of such remittances made or anticipated in the usual course of dealings between them, balances were from time to time suffered to remain in the hands of the Commonwealth Bank, to be met by the proceeds of such negotiable paper, then the Bank of the Metropolis is entitled to retain against the New England Bank for the balance of account due from the Commonwealth Bank." Among other things, as the bill of exceptions shows, the plaintiff asked the court to instruct the jury "that the said last-mentioned notes were transmitted to the said Bank of the Metropolis in letters notifying the defendants that they were transmitted *for collection* in the form commonly used by said banks in transmitting negotia-

ble paper for collection, and with no other instruction as to who was the real owner of such negotiable paper, then it is competent for the jury to infer from the facts aforesaid that the defendant had notice that the said paper was transmitted by the Commonwealth Bank as agent, and not as the owner thereof; and, if the jury shall so find, then the plaintiff is entitled to recover, notwithstanding the jury shall find that the said Commonwealth Bank and the Bank of the Metropolis treated each other as the true owners of the paper so remitted, and notwithstanding they further find that balances were from time to time suffered to remain in the hands of each other, to be met by the proceeds of negotiable paper deposited, or expected to be transmitted, in the usual course of dealing between them, and notwithstanding the course of dealing stated in the instruction heretofore given at the instance of the defendants." To this instruction the defendant objected, but the instruction was given against the objection, and the defendants excepted, and, on this exception, the second writ of error was granted. Taney, C. J., again announced the opinion of the Court, in which he formulated the instruction I have copied, as containing what was decided in the former case; and he said that the instructions given on the second trial were complex; and further said: "We restate the former opinion of this Court in this form because we presume it must have been misunderstood by the Circuit Court. And, as it was not followed in the proceedings under the mandate, the judgment must be reversed, and the cause remanded, with directions to award a *venire facias de novo.*"

The counsel for defendant in error refers to the case of *Wilson* v. *Smith*, 3 How. 763, and says: "It is a case which, in the absence of a knowledge of other decisions of the court would have been supposed by every one to establish the rule as we are contending for it. There the paper was indorsed in blank, had been deposited for collection with an agent, and had been sent by the agent to a subagent, by whom it was collected. The owner of the draft was allowed to recover the amount of it from the subagent, notwithstanding the fact that the agent was indebted to the subagent when the draft was received. The effort made in that case to dis-

tinguish it from the case of *Bank* v. *Bank*, 1 How. 234, seems to be at least open to criticism." Let Taney, C. J., who delivered both the opinions cited, speak for himself, as he did for the whole court. On page 769 he said: "So far, therefore, as the question of privity is concerned, the case before us is precisely the same with that of *Bank* v. *Bank*, 1 How. 234. In that case, the bills upon which the money had been recovered by the plaintiff in error were the property of the New England Bank, and had been placed by it in the hands of the Commonwealth Bank for collection, and were transmitted to the Bank of the Metropolis in Washington, where the bills were payable; and, upon referring to the case, it will be seen that the court entertained no doubt of the right of the New England Bank to maintain the action for money had and received against the Bank of the Metropolis, and the difficulty in the way of its recovery in the action was not a want of privity, but arose from the right of the Bank of the Metropolis to retain, under the circumstances stated in the case, for its general balance against the Commonwealth Bank. In that case, as in the present, the agent transmitting the paper appeared, by the indorsements on it, to be the real owner, and the party to whom it was transmitted had no notice to the contrary, and the money received was credited to the Commonwealth Bank. We think the rule very clearly established that whenever, by express agreement between the parties, a subagent is to be employed by the agent to receive money for the principal, or where the authority to do so may fairly be implied from the usual course of trade, or the nature of the transaction, the principal may treat the subagent as his agent, and, when he has received the money, may recover it in an action for money had and received." The proof in this case showed " that the draft or bill of exchange upon which the money was collected and received by the defendant was the property of the plaintiff; that it had been by them placed in the hands of their agent, David W. St. John, at Augusta, Georgia, for collection, and by him (St. John) forwarded to the defendant, St. John's agent, at Savannah, Georgia, for acceptance and collection; that it was accepted and paid to the defendant, by whom the proceeds were received, and

credited to the account of St. John, from whom the defendant received the draft or bill for collection, and who was indebted to the defendant at the time; that at the time said bill was so paid to the defendant, and by him credited to the account of St. John, he (St. John) had failed in business, and had departed this life; that he failed, and had not recovered his affairs at the time of his death, and was insolvent; that the credit for the amount of the bill carried by the defendant to St. John's account was made in payment of a previously existing debt due by St. John to the defendant." Now, as to another question in the case, Taney, C. J., said: "Another question has been raised by the agreement; that is, whether the defendant has a right to retain on account of the money due to him from St. John. * * * Upon this part of the case, as well as upon the question certified, we think the case of *Bank of the Metropolis* v. *New England Bank* decisive against the defendant. It appears, from the statement, that he made no advances, gave no new credit, to St. John, on account of this bill. He merely passed it to his credit in account. Now, if St. John had owed him nothing, upon the principles we have already stated the plaintiff would be entitled to recover the money; and we see no reason why he should be barred of his action because St. John was debtor to the defendant, since the case shows that he incurred no new responsibility upon the faith of this bill, and his transactions with St. John remained in all respects the same as they would have been if this bill had never been transmitted to him. In the case of the Bank of the Metropolis and the New England Bank, it appeared in evidence that there had for a long time been mutual dealings between these two banks in the collection of money for each other, and that balances were suffered to remain and credit given on the faith of the paper transmitted, or expected to be received, according to the usual course of their business with one another. And the court held that, if credit had been so given, the party giving it had the same right to retain as if he had made an advance of money."

It seems to me that the Chief Justice has drawn a very clear and satisfactory distinction between that class of cases where the owner may collect the money in the hands of an

agent, although he indorsed the bill in bank, and the other class where banks have mutual dealings with each other, and credit given on the strength of such paper so indorsed, in which it is held that the owner cannot recover. The case of *Sweeny* v. *Easter*, 1 Wall. 166, fully sustains the cases theretofore decided by the Supreme Court on this subject. These decisions of the Supreme Court of the United States have been followed in the following cases, cited by counsel for plaintiff in error: *Rathbone* v. *Sanders*, 9 Ind. 217; *Milliken* v. *Sharpleigh*, 36 Mo. 596. The same principle, it seems to me, is clearly recognized in *Bank* v. *Gregg*, 79 Pa. St. 384, where it was held that where a note was made to plaintiff's order, indorsed by him, and sent through the house of Brady, a banker, "for collection and credit," Brady, by the indorsement, did not become the owner of the note and had no right to pledge it, or direct its proceeds to be credited to him, in payment of his indebtedness to the defendant; but that, if the defendant had made advances or given new credit to Brady on the faith of the note, it would have been entitled to retain the amount out of the proceeds. The doctrine as laid down by the Supreme Court of the United States has not been adopted by all the States, certainly. It is expressly repudiated in New York. *McBride* v. *Bank*, 26 N. Y. 450, where Balcom, J., for the court, says, after deciding to the reverse of the principle: "It must be conceded that, according to the decisions of the Supreme Court of the United States in *Bank* v. *Bank*, 1 How. 234, 6 How. 212, the defendants acquired a lien on the notes against Paul & Prachard, and the money received thereon, which enabled them to retain the same in satisfaction of the balance of account that the Canal Bank owed them. But the rule laid down by the Federal Court in that case has never been adopted in this State, and it is inconsistent with decisions of our courts, which have been regarded as correct expositions of the law for more than forty years."

As sustaining his view of the case, counsel for appellee also cites *Dickerson* v. *Wason*, 47 N. Y. 439; *Dod* v. *Bank*, 59 Barb. 265; *Bank* v. *Bank*, 1 Cush. 177; *Lawrence* v. *Bank*, 6 Conn. 529; *Bank* v. *Johnson*, 9 Gill & J. 297; *Bank* v. *Gregg*, 79 Pa. St. 384. This last decision, as I think I have

shown, does not sustain the position. But few of the cases cited are those where banks had mutual dealings, as in the case in 1 How.; and the cases in 6 Conn. and 9 Gill & J. were decided in 1827 and 1837, respectively, long before the case in 1 How. But if we admit that these cases, and many others, oppose the principles decided by the Supreme Court of the United States, as we are bound by no decisions on the subject, either in Virginia or in this State, and being free to lay down the laws as we believe it ought to be, we shall follow the Supreme Court of the United States, because, in a case like this, it commends itself to our judgments as just and equitable. Banks are a necessity. Merchants and other business men could not attend to their large business interest, spread, as they are all over the country, without the facilities afforded them by the banking-houses. It is most convenient for their collections. And the banks could not do business without their correspondents in different parts of the Union. They cannot send special messengers to remote points to collect drafts, bills, or notes, but they inclose them to correspondents next to where the drawees or makers live, and they are by such correspondents presented and collected. Such banks have mutual dealings with each other; and when they do, as a general thing, both are trusted by their customers; and, when such customers have negotiable paper maturing against persons at remote places, it is often the case that they indorse the paper in blank and the bank indorses it in blank, and sends it to its correspondent, who collects it, and gives the remitting bank credit for it; and the remitting bank, on being advised that the note has been paid to its correspondent, at once pays its customer or depositor. These transactions are constantly occurring, and no question is ever raised until one of the banks fails, as sometimes they do fail. Then it is that the customer who has indorsed the paper in blank, and thus misled the bank which collected his money, and that bank loses thousands of dollars by the very bank he has so often trusted; yet wants to recover from the collecting bank the money, when that bank never knew he had any interest in the paper, and had given credit therefor to the remitting bank. Under these circumstances, the original owner of the draft

or note ought not to be permitted recover to from the collecting bank.

If the receiving and collecting bank, at the time of the mutual dealings with the bank sending paper, had notice that such bank had no interest in the bills or notes transmitted, and that it transmitted them for collection merely as agent, then the collecting bank would not be entitled to retain, against the bank transmitting such paper, for the general balance of the account with such bank. And, if the collecting bank had no notice that the bank sending the remittance was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the collecting bank is not entitled, against the real owner, unless credit was given to the bank sending the paper, or balances suffered to remain in its hands, to be met by the negotiable paper transmitted, or expected to be transmitted, in the usual course of the dealings between the two banks. But if, in the mutual dealings between two banks, the collecting bank regarded and treated the bank transmitting negotiable paper as the owner of such paper which is transmitted for collection, and had no notice to the contrary, and, upon the credit of such remittance made or anticipated in the usual course of dealing between them, balances were from time to time suffered to remain in the hands of the bank sending the remittance, to be met by the proceeds of such negotiable paper, then the collecting bank is entitled to retain, against the real owner of the paper, for the balance of account due from the bank transmitting such paper.

And we hold, in the language of Taney, C. J., in the case in 1 How., varying the language to suit the facts in the case before us, that as there had been for several years mutual and extensive dealings between the Penn Bank and the Exchange Bank, and an account kept between them, in which they mutually credited each other with the proceeds of all negotiable paper transmitted for collection, when received, and accounts were regularly transmitted from the one to the other, and settled upon these principles, and upon the face of the paper transmitted it always appeared to be the property of the respective banks, and the collecting bank had no notice that the transmitting bank

did not own the paper, and such paper was transmitted by each of the banks on its own account, there is a lien for a general balance of account, no matter who may be the real owner of the paper.    It seems to me that these principles, thus established, are essential to the general good of a banking system, and are only the necessary protection that banks should have by the mercantile law; and, as it is necessary for the protection of the banks, it is also essential to the public good.    If it were not the law, the banks would find additional obstacles in their way.    They would have to be extremely careful in transmitting paper, in the directions given, and in the correspondents they selected, and they could not transact business with the facility they can under the wise and just rule established by the Supreme Court of the United States.    It is really no hardship on the real owner of the paper.    In many, if not in most, cases, he gives the draft, bill, or note to his own banker, with his indorsement in blank; and, if it is known to be good, it is at once put to the credit of his account, indorsed in blank, or may be for collection, to the correspondent, who collects it, and puts it to the credit of the sending bank; and at intervals the accounts between the banks are adjusted, and balances remitted.    If a customer does not wish to trust his own banker he can restrict his indorsement " For collection," or, as in *Bank* v. *Bank*, 17 Reporter 325, where the indorsement was, " For collection. Pay to the order of O. L. Baldwin, Cashier."    It was held that the legal effect of the indorsement was to notify defendant that the plaintiff was the owner of the checks, and that the Newark Bank was merely its agent for collection, and that defendant was liable for the amount of the checks in a suit by plaintiff for money had and received.

Here there is nothing to indicate that the Penn Bank was not the owner of the Carroll sight draft.    If Carroll had drawn that draft payable to his own order, and indorsed it " For collection," then it would have shown clearly that he had not parted with the ownership of it.    But he directs the drawee to " pay to the order of Penn Bank."    This would indicate that the Penn Bank, being designated the payee, owned the draft.    It was drawn in favor of the Penn

Bank, and would indicate that Carroll had received from the Penn Bank the value of the draft. The Penn Bank indorsed it, "Pay Exchange Bank, or order, for account Penn Bank." This would indicate clearly that the Penn Bank claimed to own the draft; and but for the mutual dealings and course of business between them, it would have been the duty of the Exchange Bank to have at once remitted proceeds, after collection, to the Penn Bank. But, under the law we have stated, it had the right to place it to the credit of the Penn Bank, and hold it for any balance due it. This case comes clearly within the rule laid down in 1 How. and 6 How.

But it is insisted that in the letter transmitting the draft is the abbreviated "no protest;" thus, "no prin." It may mean this; I cannot tell. It is not explained in the record, and, if it means "no protest," it is too slight evidence of ownership in some other than the Penn Bank to show such fact.

The judgment of the Circuit Court is reversed, and judgment here entered for the defendant.

REVERSED.