## SWIFT & CO. v. HAMMOND FARMERS' ASS'N, Limited, et al.

District Court, E. D. Louisiana, New Orleans Division. July 8, 1927.

1. **Banks and banking** ⟲154(6)—**Principal must prove ownership of money deposited by agent and applied to agent's indebtedness to bank's knowledge, or that bank did not change position.**

Where bank applied agent's deposit to past-due notes as authorized by notes, principal, in order to stand in better position than its agent, must show that deposit or part thereof consisted of money collected by depositor for it as its agent, and that bank had notice of principal's ownership of fund creating deposit, or, in absence of such notice, that bank had not changed its position by reason of the deposit, by extending credit to depositor in reliance on its ownership of the money deposited.

2. **Banks and banking** ⟲134(6)—**Principal held entitled to recover from bank trust moneys deposited by agent and applied on agent's past-due notes.**

Where co-operative farmers' association, which as plaintiff's agent sold fertilizer to farmers under contract requiring it to deposit collections in separate bank account, deposited collections in its general account, and thereafter bank applied balance of deposit on association's past-due notes, as authorized by notes, *held* that, as bank did not change its position in reliance on association's ownership of money deposited, plaintiff was entitled to recover from bank money so collected and deposited, so far as it could trace collections into deposit.

In Equity. Suit by Swift & Co. against the Hammond Farmers' Association, Limited, and others. Decree for plaintiff.

R. C. McManus and C. B. Shaw, both of Chicago, Ill., and J. Blanc Monroe, Monte M. Lemann, and Walter J. Suthon, Jr., all of New Orleans, La., for plaintiff.

Dufour, Goldberg & Kammer, of New Orleans, La., Justin V. Wolff, of New Orleans, La., and A. W. Spiller and W. S. Rownd, both of Hammond, La., for defendants.

GRUBB, District Judge. Swift & Co., of Chicago, Ill., brought this bill in equity against the Hammond Farmers' Association, Limited, and the Tickfaw Farmers' Association, two co-operative farmers' associations operating in the Louisiana strawberry coun-

try, and the Hammond State Bank and the First State Bank & Trust Company, two banks doing business in Hammond, La., to recover certain amounts alleged to have been collected by the two associations as agents for Swift & Co. and to have been deposited as trust funds in the associations' bank accounts with the defendant banks, which had appropriated them to the payment of amounts owing by the associations to the banks. The bill alleged that there was due to the complainant unremitted fertilizer collections amounting to $9,078.16 in the case of the Hammond Farmers' Association and $2,306.98 in the case of Tickfaw Farmers' Association, which amounts were alleged to be trust funds which could be traced into the moneys which the banks had appropriated.

Swift & Co. had entered into contracts with the two associations in the fall of 1922, by the terms of which it was provided that Swift & Co. should consign fertilizer to the associations which should act as agent of Swift & Co. in selling the fertilizer to strawberry farmers. Under these contracts, the associations, acting as agents of Swift & Co., were to collect the price of the fertilizer from the various farmers during the strawberry marketing season in the spring of 1923, and to remit these collections to Swift & Co. One of the associations operated in one section of the strawberry growing belt and the other in an adjoining section.

In operating under these contracts, the associations, in some instances, took a note for the price of the fertilizer from the farmers; in other cases, the fertilizer sale was merely on open account. Where notes were taken, they were sent by the associations to Swift & Co., who later returned them on trust receipts to the associations for collection. Each of the associations had a regular bank account with the Hammond State Bank and also with the First State Bank & Trust Company, both of Hammond, La. The associations borrowed money from the banks and made loans to the strawberry farmers. The associations also sold crates and other necessary supplies to those farmers. For these advances and sales to the farmers, the associations, at times, took notes of the farmers, a number of which were pledged by the associations to the banks as security for the loans of the banks to the associations. The notes were likewise turned over by the banks on trust receipts to the associations for collection.

During the marketing season in the spring of 1923, the associations, according to

their previous custom, sold the strawberry crops of the various farmers, and, as agent for the farmers, collected the price of the berries from the strawberry buyers. The berries of numerous growers would be included in one carload, which would be sold as a whole for one lump price, the selling association showing in its books the distribution of this price among the different farmers whose shipments had made up the carload. Out of the price received for the berries, the associations collected the amounts due by the various farmers for the fertilizer which had been consigned by Swift & Co. The associations also collected, for their own account, such amounts as were due by the farmers for cash advances or for crates and other merchandise, including amounts due on notes which had been pledged to the banks as security.

When a carload of berries would be sold, the association would draw a set of checks (termed "strawberry checks"), one in favor of each grower whose berries were in that car for the amount of his share of the price. As long as the association had any debts to collect from a particular grower, the strawberry checks of that grower were not delivered to him, but were held in a file or pigeonhole bearing his name, in the association's office. When a grower had accumulated enough strawberry checks to cover all of the debts which the association had to collect from him, a settlement would be made with him in the following manner: The farmer would be required to indorse back to the association a sufficient amount of the strawberry checks, which had been made out in his favor, to cover all his debts. The association would then close out the transaction by redepositing these checks to its own credit in one of its bank accounts. The records of the associations were so kept as to show collections made as of the dates of such redepositing, and so as to show also, to the extent hereinafter stated, the allocation of such collections as between amounts due for fertilizer, for advances by the association, and for merchandise sold by the association. The grower would then receive for himself all of his strawberry checks in excess of the amount necessary to pay his debts.

The contracts of the associations with Swift & Co. provided that each association should deposit in a separate bank account its collection of fertilizer money for account of Swift & Co. This, however, was not done and, when fertilizer money was collected from farmers in the manner above described, it was left in the general bank account of

the collecting association. The record shows that during the 1923 season the Hammond Farmers' Association collected, as the agent of Swift & Co., from farmers on fertilizer indebtedness, on various dates, sums aggregating $14,166.53, and out of this amount remitted to Swift & Co. on May 5, 1923, the sum of $5,088.37. The Tickfaw Farmers' Association, during the same season, similarly collected, in its capacity as agent, the sum of $3,332.41, and remitted also on May 5, 1923, the sum of $3,023.57. Except for the payments above noted, Swift & Co. received no other remittances from the associations out of the fertilizer collections which they had made.

On May 17, 1923, the Hammond State Bank appropriated the sum of $15,704.12 out of the amount on deposit with it to the credit of the Hammond Farmers' Association, and applied this amount to the payment of past-due notes of the Hammond Farmers' Association which it held. On the same date, the First State Bank took similar action as to an amount of $3,486.82 to the credit of the account of the Hammond Farmers' Association with it. These appropriations practically wiped out the balances then to the credit of the Hammond Farmers' Association with these banks.

The First State Bank took similar action on May 9, 1923, as to the amount of $7,949.67 to the credit of the Tickfaw Farmers' Association with it. No money of the Tickfaw Farmers' Association was appropriated in this manner by the Hammond State Bank. If the moneys appropriated had belonged to the associations, the appropriations would have been authorized as between the banks and the associations by appropriate stipulations contained in the notes.

The representatives of Swift & Co. testified that the banks had been informed of the arrangements whereby the associations were to collect as agents of Swift & Co. accounts due for fertilizer. The officers of the banks denied they had such notice.

It appeared from the evidence that neither bank had changed its position to its disadvantage by reason of the deposit in the association's accounts of the funds collected for account of Swift & Co. The indebtedness of the Hammond Farmers' Association to the Hammond State Bank, which the latter undertook to satisfy by the appropriation of the association's balance with it, was made up chiefly of indebtedness carried over from the preceding season, which the association had been unable to pay. The indebtedness of the Hammond Farmers' Association to the

First State Bank likewise resulted from credit extended to that association before any fertilizer money had been deposited in the association's account.

The records of the Tickfaw Farmers' Association, produced at the trial, were of such fragmentary nature as to make it impossible to trace any of the unremitted fertilizer money collected by that association for Swift & Co. into either of the bank accounts of the association, and counsel conceded that the proof did not permit any recovery from the banks as to amounts collected by that association.

The records of the Hammond Farmers' Association, which were produced at the trial, coupled with the testimony of the employees of that association, showed that the fertilizer moneys collected by the association, in the manner above explained, had been deposited in the one or the other of the defendant banks; but, while the great bulk of the association's business, as shown by the total amount of the deposits, was done with the Hammond State Bank, and it might therefore be assumed that the greater part of the fertilizer moneys were actually deposited in that bank, yet, except to the extent hereinafter stated, the records of the association were not so kept as to show clearly into which particular bank, as between the two bank defendants, the fertilizer collections had been deposited. To the extent of $249.39, however, the records produced sufficiently earmarked deposits to identify fertilizer collections in that sum as deposited in the First State Bank, on dates prior to May 17, 1923 (the date of the appropriation by that bank of the association's balance), and to the extent of $1,469.25 the records produced were sufficient to identify fertilizer collections in that sum as deposited in the Hammond State Bank between May 6, 1923, and May 17, 1923 (amounts deposited prior to May 6, 1923, having been absorbed by the remittance which the association made on May 5, 1923, to Swift & Co. by check on the Hammond State Bank).

[1] The foregoing facts present the question of the right of the defendants the First National Bank and the Hammond State Bank to appropriate to the satisfaction of the indebtedness of the Hammond Farmers' Association to them the amount of the deposit of the Hammond Farmers' Association with the banks, at the time they made the appropriations, as against the plaintiff's right to the deposit. As between the banks and the association, the banks' right to apply the deposit is undoubted. In order that the plaintiff

may stand in a better attitude, it must show (1) that the deposit or a part of it consisted of moneys collected by the association, as its agent, for fertilizer sold by the association, and so was its money; (2) that either (a) the banks had notice of the plaintiff's ownership of the fund that created the deposit, or (b) if the banks were without such notice, then, that they had not changed their positions by reason of the deposits by extending credit to the association in reliance upon its ownership of the money that went into the deposit. Bank of Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 115; Id., 6 How. 212, 12 L. Ed. 409; Wilson v. Smith, 3 How. 763, 11 L. Ed. 820; Fulton National Bank v. Hosier (C. C. A.) 295 F. 611; In re Steele-Smith Dry Goods Co. (D. C.) 298 F. 812; Harter v. Inglis (C. C. A.) 6 F.(2d) 841.

[2] Under the arrangement between the plaintiff and the Hammond Farmers' Association for the year of 1923, under which the plaintiff's fertilizer was sold to the farmers, the association acted as agent for the plaintiff in collecting the price of the fertilizer from the purchasers, and the money so collected and deposited in the banks remained the money of the plaintiff after the deposits were made. The contract provided that the collections be placed in a separate bank account by the association. This was not done by it. However, the failure to keep a separate bank account did not change the ownership of the money so far as it could be traced into the general bank accounts of the association, which were appropriated by the banks. The evidence satisfactorily establishes that on May 17, when the two banks set off the respective deposits against the indebtedness of the association to them, of the deposit in the Hammond State Bank of $15,704.12, the sum of $1,489.25 came from fertilizer collections and was the property of the plaintiff, and that, of the deposit in the First State Bank of $3,486.82, the sum of $249.39 came from fertilizer collections and was the property of the plaintiff. The evidence failed to show that any fertilizer collections made by the Tickfaw Farmers' Association went into either bank or was appropriated by it. The evidence is conflicting as to whether the banks had notice of the arrangement, by which the association acted as agent for plaintiff in making fertilizer collections. However it satisfactorily appeared from the evidence that neither of the banks had in any way changed its position to its disadvantage in reliance upon the ownership by the association of moneys collected by the association for the price of plaintiff's fertilizer, and which was deposited to the general bank account of the association.

Under the authorities cited and to the extent that the deposits were shown to have been made from fertilizer collections for account of the plaintiff, made by the association for it, the banks were without right to set off such deposits against the indebtedness of the association to them, there having been no unfavorable change in the status brought about by the deposits.

This will result in a decree for the plaintiff against the Hammond State Bank for $1,489.25, with interest from the commencement of this suit, and against the First State Bank for $249.39, with interest from the same date.