CONTINENTAL NATIONAL BANK OF MEMPHIS *v.* FIRST NATIONAL BANK OF WEST POINT.

BANKS AND BANKING.    *Collections.    Unlimited indorsement.    Insolvency. Right to proceeds.*

A bank receiving checks drawn on it from its correspondent bank, payable to a third bank which had indorsed them in blank, has the right, being ignorant of its correspondent's insolvency and of the the the fact that it held the checks only for collection, to credit the sums drawn for to its correspondent from whom it received the checks in accordance with the course of uniform dealings between them, and is not liable to the payee in the checks who had sent them for collection to the correspondent bank, since the payee bank by its unlimited indorsement had divested itself of ownership of the checks.

FROM the circuit court of Clay county.

HON. WILLIAM F. STEVENS, Judge.

The Continental National Bank of Memphis, Tenn., appellant, was plaintiff, and the First National Bank of West Point, Miss., was defendant in the court below.    From a judgment in defendant's favor the plaintiff appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Leory Percy,* for appellant.

As said by Daniel, in his work on Negotiable Instruments, sec. 1635:

"The question whether or not the holder of a check may sue a bank holding funds of the drawer, upon its refusal to pay,

has divided the opinions of the courts and jurists, and no little perplexed the legal profession."

Or, as said by Morse on Banks and Banking, vol 2, sec. 493:

"Authority is as· divergent as the rays of the sun."

The divergent authorities, and the reasoning supporting the conflicting instructions, seem to me to be admirably and succinctly collated by the last named author.

After setting forth the authorities, pro and con, on the subject and unhesitatingly indorsing and commending those upholding such right of action in the holder, this author concludes:

"We hope that it will not be many years before it will cease to be possible to find this blot on the common law. No amount of deciding in the United States Supreme Court, nor in any other chamber of wisdom. can make the unjust just. And as certainly as the Dred Scott decision is dead, so truly will the decision in the *Bank of Republic* v. *Millard* die with the judges who rendered it."

As said by this author, it seems to me to be clear that all of the advanced thought of the age favors giving the holder the right to sue, and the best text writers on the subject, while admitting that the weight of decisions is to the contrary, unhesitatingly, after analysis and considering the reasons upholding such decisions, repudiate them. Daniel on Negotiable Instruments, secs. 1635-6142, inclusive, and authorities there cited; *Simmons Hardware Co.* v. *Bank of Greenwood*, 41 S. C., 177 (s. c., 44 Am. St. Rep., 700); 5 Am. & Eng. Ency. Law [2d ed.], 1061, *et seq.*

The position that when the bank has unincumbered in its possession sufficient to pay the check, that it is its duty to pay it, and that it is bad faith or negligence on its part not to pay it, by which the check holder is directly injured, and that such injury constitutes the basis of a right of action, seems to us founded in justice and right and to be impregnable, and we

commend to the court especially sec. 499 of Morse on Banks and Banking.

The principal answer relied upon is lack of privity between the holder of the check and the bank. This is technical purely, and technically unsound. The fundamental question to be passed upon, is, can a party for whose benefit a contract is made, although he be no party to such contract, sue upon it?

And, as said by the supreme court of this state, in *Lee* v. *Newman,* 55 Miss., 365: "In America, it has been held that such promise is to be deemed made to the third party, if adopted by him, though he was not cognizant of it when made. In law, the promise is held to be made to him to whose benefit it inures." Daniel on Negotiable Instruments, sec. 1639, note 1.

There is no hardship and there can be no injury inflicted upon any one by holding that a bank should comply with its duty, and pay a check when presented to it, drawn by a depositor who has funds in the bank sufficient to pay it, and that upon the failure to pay such check the parties who are injured by this breach of duty are entitled to recover for the damage done them, whether such parties be the holder or the drawer of the check.

The pregnant facts are that appellant forwarded to the American National Bank of New Orleans, La., thirteen checks, aggregating $1,381.91, drawn on the First National Bank of West Point, Miss., for collection and remittance; that said checks were received by the American National Bank when it was, and had been for a long time, to the knowledge of its officers insolvent, and these checks were forwarded to the Bank of West Point, upon whom they were drawn, with this letter:

"We inclose for collection and remittance items, as stated below. Unless otherwise instructed, protect all items not paid or accepted, and return at once."

These checks were collected by the appellee, and, as stated in the specific pleas, would have been remitted, but for the fact that after collection, and before remittance, appellee was

advised that the American National Bank had closed its doors, and thereupon credited the account of the American National Bank with the proceeds of the checks.

The question, stripped of useless verbiage, simply is: "Has the West Point Bank the right to reduce the indebtedness now owing to it by the insolvent American National Bank by appropriating money belonging to this appellant to the account of the American National Bank?"

There is no similarity whatever between this case and that of *Billingsley* v. *Pollock,* 69 Miss., 759. There, the money had been collected by an insolvent bank, and indistinguishably mingled with the assets of that bank, and it was impossible to say whether such money passed into the hands of the receiver of the insolvent bank or not. It could not be traced into the receiver's hands. The case would have been analogous to this case, if the collection had come into the hands of the bank after the appointment of the receiver, and, unquestionably, the court would have held that the receiver held same as trustee for the owner.

A correspondent bank can only claim a lien upon commercial paper, or its proceeds, to the extent of any credit given to the remitting bank, upon the presumed ownership of the paper. Zane on Banks and Banking, sec. 175, p. 298.

Even where the indorsement upon paper is a general indorsement, a correspondent bank can only hold it for the debt of the remitting bank, when it has given credit upon this particular piece of paper, or has a lien by agreement, by a course of dealing between the banks. Zane on Banks and Banking, sec. 190, p. 323.

*Critz, Beckett & Kimbrough,* and *Roane & McClellan,* for appellee.

Where the bank received the check of its depositor, who has funds in it sufficient to pay the draft, the draft is paid, there is no lien on the amounts in the bank, and no way of identifying

the fund, and the same is untraceable, and cannot be recovered either at law or in equity, against the bank which has credited the same on the account of its correspondent. *Billingsley* v. *Pollock,* 69 Miss., 761; *Citizens Bank* v. *Bank,* 71 Miss., 271; (1 Daniel Neg. Ins. Co., 336; Morse on Banks and Banking, secs. 493, 175, 186, 189, 190, 3 Banking Cases and American notes, 244, 246) ; *State Bank* v. *Yanley,* 165 U. S., 634.

The general rule is that one bank has a lien on securities of another bank sent to it for collection for advances due from such a bank in preference to all other liens. I Daniel Neg. Inst., secs. 336, 340.

While the statute of Mississippi is commonly designated as an anti-commercial statute, it must be remembered that the contract of drawer, indorser and acceptor are all separate and distinct contracts, and each is governed by the law of the place where made. The indorsement in this case was made in Tennessee, and is governed by the law of Tennessee, but whether governed by the law of Tennessee or Louisiana is immaterial, both being the same. 1 Daniel Neg. Inst., secs. 889, 902 ; *Crabeau* v. *Sgort,* 1st (Cold.) Tenn., 293 ; *Lowry's Admr.* v. *Western Bank,* 7 Ala. (N. S.), 120 ; *Dugan* v. *Sparrow,* 3 Ky., 167 ; *Murrell* v. *Jones,* 40 Miss., 565 ; *Rawlins* v. *Poindexter,* 14 Smed. & M., 66 (George's Dig., 85, sec. 134).

It is distinctly admitted that this is the rule in Mississippi, in all cases where the contract is not governed by our anti-commercial statutes. *Bank of Meridian* v. *Strauss,* 66 Miss., 482.

TRULY, J., delivered the opinion of the court.

Appellant was the owner of eleven checks, aggregating $1,318.91, drawn prior to July 31, 1896, on appellee, by parties, all depositors with appellee, in amounts in excess of their checks. These checks were by appellant on said July 31st sent to the American National Bank of New Orleans, La., for collection and remittance, each check being indorsed, "Pay to the

order of any State or National Bank." The American National Bank at the date of the receipt of these checks was, and for some months prior thereto had been, to the knowledge of its own officers, but without the knowledge of appellant or appellee, utterly insolvent. On August 3d the American National Bank sent these checks to appellee, upon whom they were drawn, for collection and remittance. On August 5th they were collected by the appellee, and would have been remitted to the American National Bank, but at 3 P. M., on August 5th, the American National Bank closed its doors and passed into the hands of a receiver, whereupon, the appellee hearing of such failure before making remittance to cover said collection, credited the proceeds thereof to the account, on its books, of the American National Bank. The appellee had no knowledge at that time that the checks were the property of appellant, and received same under the general indorsement as stated. The American National Bank had been for some time prior to its failure the New Orleans correspondent of appellee, and at the date of its failure was indebted to appellee in the sum of $20,000. Appellant sued for the amount of the checks in question, claiming that, as the American National Bank was at the date of its receipt of the checks utterly insolvent, therefore it had no right to receive such checks for deposit, and such action was fraudulent, and revoked its employment by appellant as agent; wherefore it is averred that appellee became the agent of appellant, and liable to account to it for the proceeds of the checks. On behalf of appellee it is contended that, as the checks were received under a general indorsement, it was entitled to consider them as the property of the American National Bank, and, having no information of any claim of appellant, had the right to dispose of the proceeds in accordance with the course of business dealings existing between appellee and its correspondent, the American National Bank.

The precise question here presented has never been passed upon or considered by this court, and the authorities and the

courts of last resort of the various states are in hopeless conflict. After careful consideration and review of the legal principles applicable, our conclusion is: Where a bank forwards checks for collection under a general indorsement in blank, the title to such collection, as to third parties dealing without notice, and not being put upon inquiry, passes to the bank to which they are forwarded, and the initial bank becomes simply a general creditor of the bank to which the items are sent for collection. So where in turn the second bank sends such items under a like indorsement in blank to its correspondent for collection, the same relationship is established between them, and the bank finally making the collection has the right to apply the proceeds thereof in any manner that may be authorized by the mutual understanding and course of dealing previously existing between it and the bank from which the items were received. The collecting bank is not required to make any inquiry to ascertain who, in point of fact, is the real owner of the proceeds of the collection, where the items for collection are received under a general indorsement. It has the right to assume that the ownership is in the bank forwarding the item to it. *American Exchange National Bank* v. *Theummler,* 195 Ill., 90 (62 N. E., 932: 58 L. R. A., 51; 88 Am. St. Rep., 177). Any other rule would render it impossible for the bank making a collection to protect itself unless the remittance was in all cases made to the payee named in the check, and this would often be not in accordance with the real rights of the parties in interest. Where a bank collects checks received under a general indorsement, and remits the proceeds to the bank from which the items were received, it has discharged its whole duty in the premises, and the initial bank must look to its correspondent for payment; and when, by the course of dealing or understanding, the bank making the collection has the right to apply the proceeds of such collection to the credit of the bank from which the items were received, and upon making the collection does make such application, this is likewise a full discharge of its

duty, and the initial bank has no right to hold the collecting bank for the proceeds of the collection. The possession of the checks by the American National Bank under a blank indorsement was presumptive evidence of its ownership, and appellee, not being in any manner advised of appellant's claim, and not placed upon inquiry, had the right to consider the checks as the property of the American National Bank, and to dispose of the proceeds according to the course of dealing existing between them. The right of appellee to deal with the proceeds is not affected by the fact that the American National Bank had been for a long period insolvent. The collection was fully completed, the money actually received by appellee, and its rights thereby established and fixed, before such insolvency was disclosed. Nor is the controlling legal principle different because no advances were made by appellee on this particular collection. The American National Bank was the regular correspondent of appellee, keeping accounts and deposit balances with each other to draw against in the regular course of business. This collection was received in the usual and customary course of business, and in accordance with such custom was, before such failure, duly credited to their mutual running account. *Bank of Metropolis* v. *New England Bank,* 1 How. (U. S.), 234 (11 L. ed., 115); *Same* v. *Same,* 6 How. (U. S.), 212 (12 L. ed., 409); *Doppelt* v. *National Bank,* (Ill.) N. E., 753; Zane, Banks and Banking, secs. 187, 188; *Commercial National Bank* v. *Armstrong,* 148 U. S., 58 (13 Sup. Ct., 533; 37 L. ed., 363); 2 Morse, Banks and Banking, secs. 591, 592. In the instant case the appellant, by forwarding these collections under a general unlimited indorsement, divested itself absolutely of all ownership, and retained simply the right to look to its correspondent, the American National Bank, for payment; and when the American National Bank, without restricting or limiting such indorsement, sent the same to its correspondent, the appellee, it in turn divested itself of all ownership in the items, and could only look to the appellee for settlement in accordance with the

established course of dealing between them. The record here discloses that under the uniform course of dealing existing between appellee and the American National Bank, the appellee had the right to apply the proceeds of all collections to the credit of the American National Bank, and, as it did so apply the proceeds of these special items without knowledge of any claim on the part of appellant, it was strictly within its rights, and cannot now be made to again account for the proceeds of collections which have already been credited to the account of the American National Bank.

It is not necessary for us to decide what remedy, if any, the holder of a check drawn by a depositor on a bank in which he has sufficient funds to pay such a check may have against the bank on which the check is drawn. That point is not presented for decision by the record here made, for the reason that appellant divested itself, as to third persons without notice, of all ownership by its general and unlimited indorsement and subsequent forwarding to its own correspondent, and its only right in the premises is that of a general creditor of the American National Bank. *Citizens' Bank* v. *Bank of Greenville,* 71 Miss., 271 (14 So. Rep., 456); *Brewing Ass'n.* v. *Clayton,* 56 Fed., 759 (6 C. C. A., 108).

*For these reasons, on the facts set out in the special pleas of appellee, appellant has no cause of action. Wherefore the judgment is affirmed.*