National Shawmut Bank of Boston *v.* Barnwell.[*]

(Division A.   June 8, 1925.   Suggestion of Error Overruled Oct. 12, 1925.)

[105 So. 463.   No. 24583.]

1. Banks and Banking.   *Draft, with bill of lading attached, in connection with instruction not to credit it till collected, held to put collecting bank on notice as to ownership.*

   A draft, though payable to the order of the bank forwarding it "for collection and credit," taken in connection with the bill of lading attached, bearing on its face unmistakable evidence that it was for purchase price of cotton sold by drawer to drawee, together with specific instruction; contrary to usual custom and course of business, that it should be credited to sender's account only when collected, *held* sufficient to put collecting bank on notice that forwarding bank was not owner of draft.

2. Banks and Banking.   *In view of instructions, correspondent bank acquired no rights in forwarded draft, except as agent for collection.*

   Though draft in terms payable to order of bank, but received by it for collection, was forwarded by it "for collection and credit," yet it being with the further instruction to credit its account "only when paid," the correspondent bank acquired no rights in the draft, except as agent for collection, and could acquire no rights in proceeds of draft till after draft was paid.

3. Banks and Banking.   *Any authority of collecting bank to credit proceeds of draft on debt of forwarding bank held terminated by insolvency of latter before collection.*

   Any authority of correspondent bank, to whom draft, payable to order of forwarding bank, but belonging to drawer, was forwarded "for collection and credit," but with instruction to credit forwarding bank's account "only when paid," to credit proceeds

of draft as payment on debt due it by forwarding bank, was canceled by the insolvency and suspension of business of the forwarding bank before the draft matured and was paid, so that correspondent bank having thereafter collected it and credited proceeds to forwarding bank, after notice of its insolvency, the owner of the draft could recover of the collecting bank.

---

*Headnotes 1. Banks and Banking, 7 C. J., Section 266; 2. Banks and Banking, 7 C. J., Section 245; 3. Banks and Banking, 7 C. J., Section 266.

APPEAL from chancery court of Coahoma county.

HON. C. L. LOMAX, Chancellor.

Suit by S. E. Barnwell, surviving partner of Barnwell Bros., against the National Shawmut Bank of Boston. Decree for complainant, and defendant appeals. Affirmed.

*Francis Fentress,* for appellant.

I. "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) That he took it in good faith and for value; (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. (Ch. 244, Laws of 1916.)" Section 52, Negotiable Instruments Act; Section 2630, Hemingway's Code.

II. "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

Section 25, Negotiable Instruments Law; Section 2603, Hemingway's Code; *Bank* v. *Bank,* 84 Miss. 103, 108; *Natl. Instrument Co.* v. *Conly,* 222 Mass. 453, 111 N. E. 357; *Boston Steel & Iron Co.* v. *Steur,* 183 Miss. 141, 66 N. E. 646, 97 A. S. R. 426; *Wood* v. *Boylston Bank,* 129

Mass. 358, 37 Am. Rep. 366; *Culnor* v. *Benedict,* 13 Gray 7.

III.   A collecting bank has a lien upon the paper sent it for collection in the absence of notice that the forwarding bank does not own the paper.   7 C. J., section 285, p. 618, 3 R. C. L., section 215, page 585.

IV.   The collecting bank has the right to apply paper sent it for collection to the unmatured debt of the forwarding bank.   *Schuler* v. *Israel,* 120 U. S. 506; *Court* v. *Hamilton,* 129 U. S. 252; *Rolling Mill Co.* v. *Ore Steel Co.,* 152 U. S. 595, 616.

V.   The fact that a draft is unpaid at the time of its application by a correspondent bank to the debt of the forwarding bank does not impair the lien of the former. *Winfield Nat'l Bank* v. *McWilliams,* 90 Okla. 493, 60 Pa. 229; *Cody* v. *City Natl. Bank,* 55 Mich. 379, 21 N. W. 373.

VI.   Title to commercial paper is vested in the payee by making same payable to its order.   *Bank* v. *Bank,* 84 Miss. 103.

VII.   The payee of a draft transfers a good title by endorsement and delivery of same.   Negotiable Instruments Act, sec. 37; section 2615, Hemingway's Code.

VIII.   Possession of commercial paper by a bank is ordinarily *prima-facie* evidence of its ownership.   *Bank of Metropolis* v. *New England Bank,* 1 How. 234.

IX.   ''Every holder is deemed *prima facie* to be a holder in due course.''   Negotiable Instruments Act, section 59; section 2637, Hemingway's Code.

X.   A correspondent bank that receives commercial paper from a forwarding bank, without notice to the contrary, has the right to assume the forwarding bank is the owner of same and is under no obligation to inquire whether it was held as owner or agent.   *Bank of Metropolis* v. *New England Bank,* 1 How. 234, 239.

XI. "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith." Negotiable Instruments Act, section 56; Section 2634, Hemingway's Code.

XII. The words "for collection and credit" used by a forwarding bank in sending a draft payable to its order, to its correspondent bank, are inconsistent with the idea that the forwarding bank is a mere agent for collection, and are in harmony with the endorsement showing ownership. *Garrison* v. *Union Trust Co.*, 139 Mich. 392; 70 L. R. A. 620, 102 N. W. 978, 111 A. S. R. 401, 5 Ann. Cas.; *Cody* v. *City Nat'l Bank*, 55 Mich. 379, 21 N. W. 373; *Vickery* v. *State Savings Ass'n*, 21 Fed. 773; *U. S. Nat'l Bank* v. *Amalgamated Sugar Co.*, 179 Fed. 718. See also *Bank* v. *Bank*, 84 Miss. 103; *Wood* v. *Boylston Nat'l Bank*, 129 Mass. 358; *Furber* v. *Dane*, 203 Mass. 108; *Prudential Realty Co.* v. *Commissioner of Banks*, 241 Mass. 277.

XIII. Suspicion or gross negligence upon the part of the taker of commercial paper will not defeat his title to same. Bad faith is requisite. *Murray* v. *Lardner*, 2 Wall. 110, 121; *Hotchkiss* v. *Nat'l Bank*, 21 Wall. 354-9; *Goodman* v. *Simonds*, 20 How. 343, 63, 8 C. J., sec. 710, page 501, 3 R. C. L., Sec. 278, page 1073.

*Maynard, Fitzgerald & Venable,* for appellee.

A. Whenever a check or draft is deposited in the bank for collection, the bank being to act simply as an agent for collection, it would appear to be quite plain that the bank does not take title but that the property in the check or draft remains in the depositor and the relation arising from the transaction is not that of debtor and creditor, but of principal and agent. *Morris* v. *Eufaula Nat'l Bank*, 122 Ala. 580, 82 Am. St. Rep. 95.

B.   It is presumed that commercial paper deposited in a bank is deposited for collection; nor is this presumption changed by the fact that the draft is drawn in favor of the bank with which it is deposited. *National Gold Bank & Trust Co.* v. *McDonald,* 51 Cal. 64, 21 Am. Rep. 697.

C.   It seems to be also quite well established that merely crediting the depositor with the amount of the check will be deemed merely provisional and the bank may cancel the credit and charge back the paper to the customer's account, if it is not paid by the maker or drawee; and, therefore, this circumstance is not conclusive.

D.   If it be determined that the paper was deposited for collection, the question remains as to the title to the proceeds of the commercial paper after it is collected. In the absence of an agreement, the custom of bankers of crediting customers with the proceeds of paper left for collection is universally recognized and customers and bankers are deemed to contract together in view of this usage.   It would appear then that the law authorizes the banker to credit the customer with the proeeds of commercial paper in their hands for collection, and the necessary effect of this is to create the relation of debtor and creditor between them from the time the paper is collected and credit given and that the bank takes title to the proceeds of the draft or check deposited with it for collection upon crediting the depositor with the amount of such proceeds. *Billingsly* v. *Pollock,* 69 Miss. 759.

E.   It is also a general rule that title to commercial paper received for collection by a bank and forwarded to its correspondent in the usual course of business does not vest title to such paper in such correspondent.   The relation between the two banks is merely that of principal and agent. *Commercial Bank of Penn.* v. *Armstrong,* 148 U. S. 50.

F.  In view of the custom, however, of correspondent banks to credit the forwarding bank with the proceeds of paper collected rather than remitting the specific money received on the collection, in view of which custom depositors are supposed to contract, the correspondent bank does take title to the proceeds in the absence of any agreement to the contrary, and the relation of debtor and creditor as between the correspondent back and the forwarding bank is established. *Commercial Bank* v. *Armstrong,* 148 U. S. 50; *Marine Bank* v. *Fulton,* 2 Wall. 252; *Romanski et al.* v. *Thompson et al.,* (Miss.) 11 So. 828.

G.  The exception to this rule last above mentioned is that if the correspondent bank becomes a purchaser for value without notice that the forwarding bank is not the owner of the paper, it would be protected even as against the real owner.

It is uniformly held that commercial paper sent ''for collection'' is notice to all parties that the depository is not the owner of the paper so endorsed and that the correspondent bank cannot be said to take without knowledge of that fact. *City Bank of Sherman* v. *Weiss,* 61 Tex. 331, 60 Am. Rep. 29; *Sweeny* v. *Easter,* 1 Wall. 166; *Bank of Metropolis* v. *New England Bank,* 6 How. (U. S.) 212.  And while there may be a few cases holding that the addition of the words ''and credit'' would indicate that the forwarding bank is the owner of the paper, this would not and could not be applicable in a case where the additional instruction is given that the account is to be credited only when the draft is paid.

The differentiation between the line of cases holding that the legend ''for collection and credit'' authorizes the correspondent bank to infer that the paper belongs to the forwarding bank and the case at bar lies in the fact that the inference drawn in the first case is an inference of fact which the court holds the correspondent bank has a right to draw, while in the case at bar, it would have no right to draw such an inference because it is specifically told that the draft is not to be treated as the

property of the forwarding bank.  *Josiah Morris & Co.*
v. *Alabama Carbon Co.,* 36 So. 764; *Old National Bank of
Evansville* v. *German-American Nat'l Bank of Peoria,*
155 U. S. 556, 39 L. Ed. 259.  See also *Sweeney* v. *Easter*
(68 U. S.), 1 Wall. 166; *White* v. *Miners Nat'l Bank,* 102
U. S. 658; *Commercial Bank* v. *Armstrong,* 148 U. S. 50.

We think then that under the facts of the case at bar,
the National Shawmut Bank in holding the draft drawn
by Barnwell Brothers, held it simply as an agent for col·
lection; and this is true under the language of the letter
of instructions to collect and credit and is particularly
true in view of the express instructions that credit was
not to be given until collected or only when collected.

The remaining question is whether or not the Shaw-
mut Bank had a right when it collected the draft to credit
it to the Delta Bank & Trust Co.  Our position is that it
did not, owing to the fact that prior to the collection of
the draft, the Delta Bank & Trust Co. had failed in busi-
ness, closed its doors and had been taken over for admin·
istration by the state banking department, a fact which is
undisputed in the record.  This was known to the Shaw-
mut Bank prior to the collection of the draft, as is un-
disputed; but this is not material.  *Old National Bank
of Evansville* v. *German-American Bank of Peoria, supra.*
Our proposition is that the bankruptcy and insolvency
of the Delta Bank & Trust Co. acted as a repeal of all au-
thority which the Shawmut Bank had to apply the pro-
ceeds of the draft.  *Morris & Co.* v. *Alabama Carbon Co.,*
36 So. 764.

To summarize, we submit that the undisputed facts
are that as between Barnwell Brothers and the Delta
Bank & Trust Co., the Delta Bank & Trust Co. was to
act only as an agent for collection, taking no property in
the draft; that as between the Delta Bank & Trust Co.
and the Shawmut Bank, under the letter of instructions
to collect and to credit only when collected, the Shawmut
Bank took no property in the draft; and that whatever
authority it might have had to credit the proceeds of the

draft when collected was terminated by the insolvency and suspension of business of the Delta Bank & Trust Co.; so that when the draft was collected after the Delta Bank & Trust Co. was taken over by the state banking department as an insolvent institution, the Shawmut Bank had no authority to apply the proceeds of the draft to any indebtedness owed it by the Delta Bank & Trust Co.

Argued orally by *Francis Fentress,* for appellant.

COOK, J., delivered the opinion of the court.

S. E. Barnwell, surviving partner of Barnwell Bros., instituted this suit against the National Shawmut Bank of Boston, to recover the proceeds of a draft drawn by Barnwell Bros. on the Davis Mills of Fall River, Mass., to the order of the Delta Bank & Trust Company, of Clarksdale, Miss., and from a decree in favor of the complainant this appeal was prosecuted.

The facts disclosed by the record are substantially as follows: The Delta Bank & Trust Company was formerly a banking corporation doing a general banking business at Clarksdale, Miss. On February 9, 1921, Barnwell Bros., a copartnership composed of S. E. Barnwell and J. W. Barnwell, and engaged in the cotton business at Greenwood, Miss., sold forty-four bales of cotton to the Davis Mills, at Fall River, Mass., for the sum of three thousand seven hundred twenty-eight dollars and ninety-six cents. They drew a draft for the purchase price of said cotton on the Davis Mills, it being payable on sixty-five days' sight to the order of the Delta Bank & Trust Company. This draft, with the bills of lading for the cotton attached thereto, was deposited with the Delta Bank & Trust Company for collection; the bank issuing to Barnwell Bros. a receipt in the following words and figures:

"Deposited with the Delta Bank & Trust Co., Clarksdale, Miss., for collection, draft sixty days, Fall River,

Mass., three thousand seven hundred thirty-eight dollars and ninety-six cents. B/L. 44 B/C attached. Credit account Barnwell Bros. when paid.'.

The Delta Bank & Trust Company forwarded this draft with the bills of lading attached to the National Shawmut Bank of Boston, appellant, which received it on Feb ruary 12, 1921. In due course, the Shawmut Bank presented the draft to Davis Mills on the 14th day of February, 1921, and it was accepted by the Davis Mills, being payable sixty days thereafter or on the 16th day of April, 1921. Accompanying the draft, as sent by the Delta Bank & Trust Company to the Shawmut Bank, was a letter of instruction reading as follows:

"We inclose for collection and credit items listed below: Davis Mills, Fall River, Mass. sixty-day sight. Three thousand seven hundred thirty-eight dollars and ninety-six cents. When accepted by Davis Mills surrender B. L. and notify us. Hold draft for payment. Credit our account *only* when paid."

The Delta Bank & Trust Company, being insolvent, closed its doors and suspended payment and business on March 15, 1921, of which fact the National Shawmut Bank was promptly notified on the following day.

In April, 1920, there was an oral agreement made between Geo. H. S. Soule, the then assistant cashier of the Shawmut Bank, and S. S. Harris, the then cashier of the Delta Bank & Trust Company, that the former bank, should become the New England correspondent of the latter bank, and that the former would lend the latter money, which should be repaid, from time to time, by the remittance to the Boston bank of New England items, including drafts for cotton. Pursuant to this arrangement, the Shawmut Bank loaned to the Delta Bank & Trust Company one hundred fifty thousand dollars and at the maturity of the Barnwell draft the Delta Bank & Trust Company owed to the Shawmut Bank one hundred forty-six thousand eight hundred twenty-three dollars and eighty-one cents. After the receipt of the Barnwell draft by

the Shawmut Bank, that bank renewed three notes made
to it by the Delta Bank & Trust Company and which ma-
tured on February 18, 1921, two of which were for twenty-
five thousand dollars each, and one for thirty thousand
dollars, while on March 1st it renewed another note owed
it by the Delta Bank for twenty-five thousand dollars.
Mr. Soule, the assistant cashier of the Shawmut Bank,
and only witness who testified in the case, states that,
when these renewals were made, the Shawmut Bank be-
lieved that the Barnwell draft was the property of the
Delta Bank and that this fact was taken into considera-
tion when said loans were renewed.

When the Barnwell draft matured on April 16, 1921, it
was paid by the Davis Mills to the Shawmut Bank and
the proceeds credited to the indebtedness of the Delta
Bank & Trust Company to the said Shawmut Bank. On
April 20, 1921, the special agent in charge of the defunct
Delta Bank notified the Shawmut Bank by letter that the
draft was not owned by the Delta Bank, but was owned
by Barnwell Bros., and was placed by them with the
Delta Bank for collection only, but the Shawmut Bank
refused to pay over the money to Barnwell Bros., hence
this suit.

The assignments of error upon which the appellant
seeks a reversal of the decree of the court below are that
the chancellor erred in failing to find that the appellant
was the holder in due course of the draft and therefore
had a good title to the same, and in refusing to dismiss
the bill of complaint.

In support of the decree, the appellee presents two
contentions: First, that the Shawmut Bank took the
draft as agent for collection only, with notice that the
draft did not belong to the Delta Bank & Trust Com-
pany, and does not occupy the position of an innocent
purchaser for value without notice; and second, that the
insolvency and bankruptcy of the Delta Bank & Trust
Company acted as a legal revocation of the power and

right of the National Shawmut Bank to apply the proceeds of the draft.

It is uncontroverted that the Delta Bank & Trust Company was not the owner of the draft in question, but took it as the agent of the appellees Barnwell Bros., for collection only, but, if the correspondent bank, the appellant, became the purchaser of the draft for value without notice that the forwarding bank was not the owner of the paper, it acquired title thereto and would be protected even as against the real owner. It appears to be the uniform holding of the courts that commercial paper sent "for collection" is notice to all parties that the forwarding bank is not the owner of the paper, while many authorities hold that the words "for collection and credit" used by a forwarding bank in sending a draft payable to its order, to its correspondent bank, indicate that the forwarding bank is the owner of the paper, and gives the collecting bank the right to apply such paper to the debt of the forwarding bank. *Garrison* v. *Union Trust Co.,* 139 Mich. 392, 102 N. W. 978, 70 L. R. A. 620, 111 Am. St. Rep. 407, 5 Ann. Cas. 813; *Cody* v. *City National Bank,* 55 Mich. 379, 21 N. W. 373; *Bank of Metropolis* v *New England Bank,* 1 How. 234, 11 L. Ed. 115. Conceding the correctness of this doctrine, and the custom of banks in receiving drafts from forwarding banks or customers to make provisional credits thereof with the option to charge back the amount in the event the paper is not paid, we do not think the doctrine is applicable to the facts here involved. The instructions contained in the letter which accompanied the draft were not merely that the draft was inclosed "for collection and credit," but these instructions contained the express and emphasized limitation that credit should be given the sender's account *only* when paid. The Delta Bank, having the draft in its hands for collection only, had the right to appoint a sub-agent for collection, and to prescribe the conditions under which the draft should be handled by this sub-agent, and the letter of instructions was a posi-

tive direction that the collecting bank should take no property in the draft. When the appellant undertook to act under this letter of instructions, it accepted the conditions imposed thereby, and under these conditions it acquired no property in the draft. Taken in connection with the bills of lading attached thereto, the draft bore on its face unmistakable evidence that it was for the purchase price of cotton sold by the appellees to the Davis Cotton Mills, and this fact, in connection with the positive and specific instructions, contrary to the usual custom and course of business, that the amount should be credited to the sender's account only when collected, was sufficient to put the collecting bank on notice of the fact that the forwarding bank was not the owner of the draft. Under the arrangement for the handling of this draft, as evidenced by the letter of instructions and the acceptance thereof, the appellees or their agent, the Delta Bank, could have recalled, or otherwise controlled, the paper at any time before its payment, and the collecting bank acquired no rights in the draft except as an agent for collection, and it could acquire no rights in the proceeds of the draft until after the draft had been paid.

Before the draft matured and was paid, however, the Delta Bank & Trust Company failed in business, closed its doors and was taken over for liquidation by the state banking department, and the appellant was notified of that fact. The insolvency and suspension of business of the forwarding bank terminated whatever authority the appellant had or might have had to credit the proceeds of the draft as a payment on the debt due it by such bank, and since the appellant collected the draft and credited the proceeds to the debt of the defunct bank after notice of its insolvency and bankruptcy, we think the appellees, the owners of the draft, are entitled to recover from the appellant the amount so collected and credited.

In discussing the effect of the insolvency and bankruptcy of a forwarding bank upon the agency of the

collecting bank and its right to credit the proceeds of a draft to the account of the defunct bank, the supreme court of the United States, in the case of *Old National Bank of Evansville* v. *German-American National Bank*, 155 U. S. 556, 15 S. Ct. 221, 39 L. Ed. 259, said:

"The contention of the defendant is that it paid the moneys which it received to the party from which it received the draft, to-wit, the Fidelity Bank, which was the agent of the owner. It is not pretended that it ever forwarded to the Fidelity Bank the cash therefor, but the claim is that it credited such amount on the account of the Fidelity Bank, the Fidelity being at the time indebted to it, and that this is equivalent to an actual payment of money. The difficulty with this contention is that, at the time this credit was entered by the defendant, the Fidelity was not in a condition to receive credit or make any settlement; it was insolvent, and in the custody of the officers of the law. . . . At the time this examiner took possession the business of the bank stopped, and the authority of the directors and officers ceased. They could not thereafter make any settlement with the defendant to the prejudice of the rights of third parties."

In the case of *Morris & Co.* v. *Alabama Carbon Co.*, 139 Ala. 620, 36 So. 764, where the facts are very similar to those in the case at bar, the court said:

"The assignment of and cessation of business by the Commercial Bank of Selma, occurring previous to the collection of the draft, operated to terminate the agency of the bank, and to forestall whatever right defendants might, in the absence of those occurrences, have had to retain the proceeds of the draft as a payment of the debt due them by that bank, and the plaintiff, as the equitable owner of these proceeds, had the right to recover therefor as for money had and received to its use."

The decree of the court below will therefore be affirmed.

*Affirmed.*