FIRST NAT. BANK OF MEMPHIS, TENNESSEE *et al. v.*
BIANCA.

(Division A.   Jan. 7, 1935.)

(Division A.   Jan. 7, 1935.   Suggestion of Error overruled Feb. 4,
1935.)

[158 So. 478.   No. 31354.]

Cooper & Thomas, of Indianola, for appellants.

**Allen & Allen,** of Indianola, for appellee.

**McGowen, J.**, delivered the opinion of the court.

From an adverse decree the appellant the First National Bank of Memphis, Tennessee, and J. S. Love, state

superintendent of banks of Mississippi, in charge of the liquidation proceedings of the Merchants' Bank & Trust Company of Indianola, Mississippi, prosecute this appeal.

The appellee, Sam Bianca, filed his petition in the liquidation proceedings of the Merchants' Bank & Trust Company, which bank was being liquidated under section 3817, Code 1930, wherein he alleged that he was entitled to a preference claim, because the proceeds of a certain check were held by the bank in trust for the petitioner. After the hearing of this case had proceeded to a considerable extent, the petition was amended so as to allow the petitioner, Bianca, to enter suit against the First National Bank of Memphis, Tennessee, as his agent in the collection of that certain check.

It was charged in the petition that the First National Bank of Memphis, which we shall hereafter call the Memphis Bank, had collected a certain check which had been forwarded to it by the Merchants' Bank & Trust Company of Indianola, which we shall hereafter call the local bank, and that the two banks had conspired together to defraud him of the proceeds of the check, in that the Memphis Bank had applied the proceeds thereof to the debt of the local bank.

The decree in this case, after reciting the parties in pleading, uses this language: "Is of the opinion, and doth so order that complainant is entitled to the relief prayed for: It is, therefore, the judgment of this court that the petitioner, Sam Bianca, do have of, and recover from, the defendant, J. S. Love, Superintendent of Banks in charge of the Merchants Bank & Trust Company of Indianola, Mississippi, in liquidation, and the First National Bank of Memphis, Tennessee, incorporated, the sum of five hundred and ninety-nine dollars and fifteen cents, being the sum of five hundred and thirty-five dollars and legal interest thereon, together with six per cent. interest on said sum from this date until

paid, and all costs of this suit accrued, and to accrue, on all of which let execution issue as at law." The amended petition sought preference as to the local bank and a money decree against the Memphis Bank.

In stating the facts of the case, we will assume that the chancellor found from the evidence the following facts: On December 19, 1931, B. B. Allen, of Indianola, an attorney for the appellee, presented a check at the local bank, a copy of which, with the indorsements thereon, is as follows:

"Bank of Clarksdale, 85—121— No. ———

"Clarksdale, Miss. Dec. 17, 1931.

"Julius Ross Bankrupt.

"Pay to the order of B. B. Allen, Attorney $585.00 five hundred eighty five & 00/100 dollars for Sam Bianca rent under Sheriff's Levy, Indianola Store—

"Void after 30 days

"Dividend of — per cent.

"Louis Jacobson, Trustee.

"No. 1429."

On left-hand side appears:

"(No. Protest 85—567)

"Countersigned:

"William Schmitt, Referee,

"By ———.———, Clerk."

Punched "paid" through center "12/22/31 85—121."

On back appears: "B. B. Allen, Atty."

Stamped:

"Pay to the orde rof Any Bank or Banker, (All prior endorsements Guaranteed Dec. 19, 1931.

"Merchants' Bank & Trust Co.
Indianola, Miss.

"85—567"

Also stamped:

"Mail:

"All prior endorsements Guaranteed: Pay to the order of Any Bank or Banker, Dec. 21, 1931.

"First National Bank 26—2—
Memphis, Tenn.
"26—2— H. Craig, Cashier."

Allen stated to the acting cashier of the local bank that he had no authority to make a deposit therein for Bianca, whom he represented as an attorney, but that he was entitled to fifty dollars attorney's fee out of the proceeds of the check, which amount he wanted credited to his personal account; the balance he left with the bank for collection, the money to be paid to Bianca when the check was collected. Thereupon the cashier handed Allen two deposit slips, one issued to the appellee, Bianca, for five hundred thirty-five dollars, and the other to Allen for fifty dollars. The deposit slip so delivered appeared, in form, to be a regular deposit slip. No notation was thereon that it was a deposit for collection only. On the next day, when Allen delivered the deposit slip to Bianca, the latter immediately objected, stating that he did not wish to become a depositor of the local bank, and had not authorized Allen, his attorney, to deposit his money there. Upon complaining to the bank that he wanted the proceeds of the check due him to pay taxes, he was assured by it that the money would be paid to him as soon as the check was collected, and that it would be treated as a deposit for collection. At the same time, he was told that he could draw a check in favor of the sheriff for his taxes, and that the check would be honored out of the funds when collected. He drew in favor of the sheriff, but the payment thereof was refused.

The check reveals that it was indorsed by the payee, "B. B. Allen, Atty.," a general indorsement without restriction, and that the local bank so indorsed it. This check, thus indorsed, was forwarded by the local bank to the Memphis Bank, with a number of other checks, and accompanying them was a letter known in banking circles as "collection and credit instructions." Upon receipt of this check by the Memphis Bank, on December

21, 1931, which was Monday, it credited the deposit account of the local bank with the amount of the check, five hundred eighty-five dollars, notifying the local bank to that effect, and forwarded it to the Bank of Clarksdale, at Clarksdale, Mississippi, the drawee. On December 22d it was collected by the latter bank, and remitted by check, drawn on the Memphis Bank, to the Memphis Bank, which upon receipt thereof, on December 23d, charged the Clarksdale Bank therewith; and thereupon the collection of the check became final. The local bank finally closed its doors and did not reopen for business on Monday, December 28, 1931.

Before the local bank closed, the Memphis Bank notified it of the collection of the check in controversy, but the letter containing the notification was not opened by the local bank officials until after the local bank had suspended operation. The local bank closed for Christmas, which was on Friday in that year, and on Monday following it was formally closed, the superintendent of banks taking charge of it under our statutes; and Bianca was never paid any part of his balance of five hundred thirty-five dollars on deposit with it.

There was never any communication between Bianca and the Memphis Bank until long after the local bank had finally closed. The Memphis Bank had no notice of any kind relative to the check or the transaction between the local bank and Bianca. It appears from the time of its organization, the local bank and the Memphis Bank had been correspondents, that the local bank owed the Memphis Bank in excess of fifty thousand dollars, and that it was the custom of the bank to send its exchange and negotiable instruments to the Memphis Bank for collection and credit.

On the 21st day of December, 1931, at the close of the day's business, the local bank had to its credit with the Memphis Bank, including the check payable to Allen, in

excess of six thousand dollars, and, when the Memphis Bank learned that the local bank had closed, there was on credit to its account less than one thousand one hundred dollars, which, after the local bank went into liquidation, was credited by the Memphis Bank on the local bank's indebtedness to it.

1. Counsel for the local bank, who also represents J. S. Love, superintendent of banks, and the Memphis Bank, contends that the decree, the material part of which has been set out, is not in fact a decree for a preference in favor of Bianca against the local bank. It is clear that the mandatory part of the decree is simply a money decree in the same form and with the same effect as that against the Memphis Bank. The mandatory part of the decree controls. The recitals leading to the mandatory part are not controlling. See 21 C. J., p. 657, sec. 843; Griffith's Chancery Practice, sec. 627, which latter authority states that a decree consists of three parts, the caption, the recitals, and the mandate. The mandatory part is essential and indispensable.

We are of the opinion that the decree in this case did not award to Bianca a preference over other creditors in the pending liquidation, and the decree here will recite that no preference is allowed thereby. We therefore do not consider the merits as to whether or not a trust was established in favor of Bianca against the local bank. Appellant Love by his counsel, does not object to the decree if it does not adjudge a preference against him.

2. It is argued that the face of the check, payable to B. B. Allen, attorney, showing that Bianca was the real party for whom the check was received, carried notice to the bank. No authority is cited for this position, and we are of the opinion that the title was vested in B. B. Allen, attorney, and the indorsement by him in blank carried the title thereof to the local bank, and that in so far as the face of the check is concerned, and in all other particulars, the Memphis Bank was the holder in due

course for value without notice. The fact that the check was payable to B. B. Allen, attorney, carried no notice to the Memphis Bank. This seems clear now in view of section 3828, Code 1930.

3. It is contended by appellee, in order to uphold the decree, that the local bank was his agent for the purpose of collecting the check, that, when the check was forwarded by the local bank to the Memphis Bank, as its subagent, the latter bank thereby became the agent of the appellee, and that, upon collection of the check by the Memphis Bank, the relation of principal and agent ceased and that of debtor and creditor was established between the Memphis Bank and Bianca. This position is wholly untenable. Under the facts of this case, we are not cited to any authority upholding that view. When the check in the case at bar was collected by the Memphis Bank and credited to the account of the local bank, without any notice of any claim on the part of Bianca, or any one else, the course of dealing between the two banks—the instruction of the local bank in writing to collect and credit—vested the title to the check, upon its collection, in the Memphis Bank. It was guilty of neither negligence nor fraud; it followed the only instructions and information given and had with reference to the check; and, when it had credited the collection in good faith, its duty of agency was discharged to Bianca. On the face of the paper, with the indorsements thereon, it would appear to any one receiving negotiable instruments for collection and credit that the local bank was the owner thereof. Bianca dealt with the local bank with reference to this practice of banks, and his remedy, if any, is against the local bank.

This question is not open in this state. The precise point was carefully considered and set at rest in the case of Continental National Bank of Memphis v. First National Bank of West Point, 84 Miss. 103, 36 So. 189, 2 Ann. Cas. 116. Likewise the rule was announced in

National Shawmut Bank of Boston v. Barnwell, 140 Miss. 816, 105 So. 462.

In the case of Continental Nat. Bank of Memphis v. First National Bank of West Point, supra, the syllabus of the case states the rule which the opinion supports, as follows: "A bank receiving checks drawn on it from its correspondent bank, payable to a third bank which had indorsed them in blank, has the right, being ignorant of its correspondent's insolvency and of the fact that it held the checks only for collection, to credit the sums drawn for to its correspondent from whom it received the checks in accordance with the course of uniform dealings between them, and is not liable to the payee in the checks who had sent them for collection to the correspondent bank, since the payee bank by its unlimited indorsement had divested itself of ownership of the checks." In that case the court especially approved the case of American Exchange National Bank v. Theummler, 195 Ill. 90, 62 N. E. 932, 58 L. R. A. 51, 88 Am. St. Rep. 177. The latter case cannot be differentiated from the case at bar.

The doctrine announced in the case of the First National Bank of West Point is based upon the case of the Bank of the Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 115, and likewise this rule was adopted by the Massachusetts court in the case of Wood v. Boylston Nat. Bank, 129 Mass. 359, 37 Am. Rep. 366.

In the case at bar the title to the check was in Allen, the attorney, who indorsed it in blank and delivered it to the local bank; which, in turn, indorsed it generally and delivered it to the Memphis Bank, which latter bank made collection, and obeyed the literal instructions of the local bank by crediting the proceeds of the check to the local bank, according to its usual course of dealings, thereby making such funds available to the local bank, and thus discharging its agency to all parties concerned, the local bank, the attorney, and the appellee. There was no notice of any claim or equity in the check

to the Memphis Bank. When the proceeds of the check were made available to the local bank, the Memphis Bank, both by custom between banks and specific instructions, discharged its agency; there being no negligence on its part in this case. According to this record, Allen had authority to indorse the check as he did—in other words, to collect it. Indeed, the local bank had an interest to the extent of fifty dollars in the check, and there was nothing to advise the Memphis Bank that the local bank did not own absolutely the check in question.

Appellant cites the case of People's Gin Co. v. Canal Bank & Trust Co., 168 Miss. 630, 144 So. 858, 146 So. 308, as sustaining the liability of the Memphis Bank. In that case the local bank forwarded its depositor's check to the Canal Bank which sent the check and remittance direct for collection to the drawee bank. The latter bank surrendered the check to the original drawee thereof and undertook to remit its own draft to the Canal Bank, which draft was never paid. The drawee bank bunched the remittance of the proceeds of the check in controversy with a number of others, and upon that fact this court held that the agency of the collecting banks had not been discharged. The check there considered was handled as a collect and remit item, and not as, in the case at bar, a collect and credit item. That case is not here presented.

Since this case was submitted, our attention has been called by appellee to the case of Dakin v. Bayly, 290 U. S. 143, 54 S. Ct. 113, 116, 78 L. Ed. 229, 90 A. L. R. 999. There the court dealt with a statute and a case based on instructions to collect and remit, and adhered to the view here expressed, as announced in the case of Bank of the Metropolis, supra, the court saying: "In that case the forwarding bank, for all that appeared, was the owner of the paper. There was neither contract nor statute to the contrary." The dissenting opinion likewise adheres to the rule announced in the case of the Bank of the Metropolis.

The evidence in this case wholly fails to establish that the local bank received this check from Allen at a time when it was insolvent; and there has been no effort to prove any knowledge of insolvency on the part of the Memphis Bank; in fact, the record discloses that the Memphis Bank allowed and permitted the local bank to continue to draw out funds in a considerable amount between the date of receipt of this check and the date it had notice of the local bank's failure.

The case is reversed, and the petition is dismissed as to the First National Bank of Memphis, and affirmed as to J. S. Love, superintendent of banks, and his successor in office, but is modified to the extent that no preference is allowed by the decree of the lower court.

Reversed in part, and affirmed as modified.